**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

**Civil Action No.:**

_____

COMMONWEALTH OF MASSACHUSETTS

        Plaintiff,

   v.

DMB FINANCIAL, LLC and GLOBAL CLIENT
SOLUTIONS, LLC,

        Defendants.

_____

**GLOBAL CLIENT SOLUTIONS'**
**NOTICE OF REMOVAL**

Defendant Global Client Solutions, LLC ("Global") hereby files this Notice of Removal

in accordance with 28 U.S.C. §§ 1331, 1441, and 1446 and removes this civil case styled

*Commonwealth of Massachusetts v. DMB Financial, LLC and Global Client Solutions, LLC,*

Civil Action Number 18-1472 H from the Superior Court of Suffolk County ("Superior Court

Action"). The grounds for removal are as follows:

## I.   NATURE OF THE CLAIM

1.     Plaintiff the Commonwealth of Massachusetts filed this action in Superior Court

in Suffolk County, Massachusetts on May 14, 2018. The Massachusetts Attorney General gave

Global notice of the filing on May 15, 2018, which Global received by mail on May 21, 2018.

2.     Plaintiff's Complaint nominally alleges two claims under the Massachusetts

Consumer Protection Act, M.G.L.A. c. 93A, § 2(a) ("Chapter 93A" or "CPA") – one against

Global, the other against Defendant DMB Financial, LLC ("DMB") – and alleges a third claim

against DMB for the unauthorized practice of law. Plaintiff seeks broad relief including a

permanent injunction, refunds of fees and amounts DMB paid creditors, a $5,000 penalty per alleged violation, and other general relief.

## II.  CONTEXT FOR THE PLAINTIFF'S CLAIM

### A.  THE FEDERAL TELEMARKETING AND CONSUMER FRAUD AND ABUSE PREVENTION ACT, AND AMENDMENTS

3.      Plaintiff alleges Global violated the CPA by providing transaction servicing for dedicated or special purpose bank accounts for Massachusetts consumers enrolled in a DMB debt management program. Global's officially recognized role as servicer of dedicated special purpose accounts, however, was created by and is specifically *permitted and governed* by the Federal Trade Commission's ("FTC") Telemarketing Sales Rule promulgated pursuant to the Telemarketing and Consumer Fraud and Abuse Prevention Act, and, especially, the October 2010 Debt Relief Amendments to the Telemarketing Sales Rule (the "TSR"). *See* 16 C.F.R. § 310.1 *et seq*.; *see also* Vol. 75, Federal Register No. 153, p. 48490 and fn. 445.

4.      The FTC enforces federal consumer protection laws that prevent fraud, deception, and unfair business practices. https://www.ftc.gov/enforcement. In addition to its authority to investigate law violations by individuals and businesses, the Commission also has federal rulemaking authority to issue industry-wide regulations. https://www.ftc.gov/enforcement/rules. These rules, such as the FTC's TSR, have the force of law. *See, e.g., Chrysler Corp. v. Brown*, 441 U.S. 281, 295, 99 S. Ct. 1705, 1714, 60 L. Ed. 2d 208 (1979) (properly promulgated, substantive agency regulations have the "force and effect of law.").

5.      The 2010 Debt Relief Amendments to the TSR created a specific niche for Global as a "Dedicated Account Provider" ("DAP"), which expressly permits what this lawsuit condemns. The FTC made clear that it "did not intend the proposed [TSR] to prohibit consumers from using dedicated bank accounts," provided by a DAP – such as Global, which the FTC

specifically identifies as such in the comments to the Rule. *See* Vol. 75, Federal Register No. 153, p. 48490. The TSR specifically permits consumers "to put funds into a dedicated bank account until the services are delivered," which the FTC itself recognized is what Global does. *Id*. and fn. 445. Global is a DAP under the Rule, the entity administering the accounts that are a focus of Plaintiff's attack in the Superior Court Action.

6.      The Superior Court Action singularly assails Global's status as a DAP and Global's servicing of dedicated special purpose accounts under the TSR as being "unfair and deceptive." *See, e.g*., Complaint at ¶¶ 121 A – O; 128; & 129. But Massachusetts has not enacted specific regulatory legislation over debt relief or debt settlement providers, so Plaintiff resorts to Massachusetts Consumer Protection Act, Chapter 93A. But Chapter 93A neither imposes on Global any of the duties Plaintiff seeks to impose nor prohibits any of the conduct Plaintiff seeks to restrain; in fact, Chapter 93A is completely silent, devoid of any express or specific regulatory control over Global. Rather, Plaintiff's proposed standards are directly derived, without attribution, from the TSR.

7.      The TSR, 16 C.F.R. § 310.3(a) and (b), itemizes prohibited telemarketing acts or practices. Section 310.3(a)(1)(viii), (A) – (D) and (2)(x) enumerates prohibitions in the sale of debt relief services. The conduct alleged in the Complaint and argued in Plaintiffs motion for injunctive relief conspicuously and literally tracks the language of the required and the prohibited conduct as spelled-out in the TSR, which signals clearly that Plaintiff knows the TSR exists, but is avoiding its mention.

8.      For example, Section 310.3(a)(1)(viii)(A) requires a debt relief service provider (DMB in this case) to disclose: "the time by which the debt relief service provider will make a bona fide settlement offer to each of them." Not by pure coincidence, but by design, paragraph

121 D of the Complaint without attribution quotes from the TSR so that Plaintiff can accuse Global of: "Failing to inform consumers of the time by which DMB will make a bona fide settlement offer to each of a consumer's creditors."

Another example is Section 310.3(a)(1)(viii)(B), which requires a debt relief service to disclose: "the amount of money or the percentage of each outstanding debt the customer must accumulate before the debt relief service provider will make a bona fide settlement off to each of them." In paragraph 121 E of the Complaint Plaintiff verbatim parrots this language to accuse Global of: "Failing to inform consumers of the amount of money or the percentage of each outstanding debt that the consumer will need to accumulate before DMB will make a bona fide settlement offer to each of the consumer's creditors." *See also* Pl.'s injunction motion at p. 8.

9.      The TSR, federal law, created Global's role as a DAP, federal law allows the use of dedicated accounts, *e.g.,* 16 C.F.R. § 310.4(a)(5)(ii), and federal law is the obvious template for the specific relief Plaintiff is seeking. Yet, Plaintiff is suing Global under the guise of the CPA – which imposes none of either the specific requirements or the specific prohibitions Plaintiff seeks to enforce – for doing precisely what the TSR empowers, directs, and authorizes Global to do. Global's status as a DAP under the TSR means that it is NOT a debt relief provider under the TSR and is NOT obligated to comply with all of the restrictions and obligations the TSR imposes on a debt relief provider. Global's status as a DAP under the TSR means it cannot be in violation of the Commonwealth's CPA, Chapter 93A *as a debt relief provider*. So questions of, application of, and interpretation of federal law abound in this case just as to the fact that Global is a "DAP."

### B.  Massachusetts' Chapter 93A -- Unfair practices; legislative intent; rules and regulations

10.     Plaintiff in the Superior Court Action is advancing a legal theory that unabashedly borrows from the TSR, but, as to Global, is *inconsistent* with the TSR and guidance from the FTC. Any consideration of the matters allegedly based on the CPA, by the plain language of the CPA, necessarily implicates the TSR because Plaintiff has nowhere else to look other than the TSR.

11.     The CPA declares that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are ... unlawful." Mass. Gen. Laws ch. 93A, § 2(a). Then the CPA explains that "the intent of the legislature" is that a court hearing a CPA claim will be "guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. [§ ] 45(a)(1)), as from time to time amended." Mass. Gen. Laws ch. 93A, § 2(b). Then in very straightforward language, Chapter 93A permits the Massachusetts Attorney General to implement interpretations of Chapter 93A, but these "***shall not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission*** and the Federal Courts interpreting the provisions of the" Federal Trade Commission Act, "as from time to time amended." Mass. Gen. Laws ch. 93A, § 2(c); (emphasis supplied). *See also McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 775 F.3d 109, 116 (1st Cir. 2014). As such, Chapter 93A, § 2 (c), specifically "limits the Attorney General's power to be within the concepts of deception or unfairness, as guided by administrative and judicial interpretation of the [Federal Trade Commission] Act." *Darviris v. Petros*, 442 Mass. 274, 281, 812 N.E.2d 1188, 1194–95 (2004).

12.     So, make no mistake, Massachusetts has "wholly incorporated" the FTC Act, 15 U.S.C. § 45(a)(1) and its rules and regulations into Chapter 93A. *McDermott*, 775 F.3d at 122, citing *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 322 N.E.2d 768, 773 n. 8 (1975). In doing

so, the CPA "incorporates the extensive body of Federal administrative and decisional law under the FTC Act, at least in so far as it relates to definitions of 'unfair' and 'deceptive'." *Purity Supreme, Inc. v. Attorney General*, 380 Mass. 762, 407 N.E.2d 297, 301 (1980) (internal citation omitted). The interpretation, application and enforcement, as needed, of the TSR – federal law – will control the litigation of these claims, such that federal law predominates over the derivative state law Plaintiff purports to invoke.

13.     Logic dictates that because Massachusetts has folded the FTC Act into the CPA, unfair or deceptive conduct that violates the FTC Act also violates the CPA. *McDermott*, 775 F.3d at 122. Of course, the converse must be true as well – conduct that does *not* offend the FTC Act *cannot* be a violation of Chapter 93A, a precept the Attorney General must accept as true and further must accept fully implicates federal law in the Superior Court Action brought against Global.

**III. BASIS FOR FEDERAL JURISDICTION**

14.     This Court has federal-question jurisdiction because the Complaint filed in the Superior Court Action asserts claims "***arising under*** the Constitution, laws, or treaties of the United States." 287 U.S.C. § 1331; (emphasis supplied). As a Court in this district explained just two months ago, a case arises under federal law within the meaning of § 1331 where a "plaintiff's right to relief necessarily depends on resolution of a *substantial question of federal law*," which is the case here. *Gallagher-McKee v. Lahey Clinic Hosp., Inc.*, No. CV 17-10184-MLW, 2018 WL 1542053, at *2 (D. Mass. Mar. 29, 2018) citing *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S.Ct. 2363 (2005); *Gunn v. Minton*, 568 U.S. 251, 133 S. Ct. 1059, 1065-67 (2013); and *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 175 (1st Cir. 2016)(citing *Grable* as authority).

15.      For instance, the U.S. Supreme Court in *Grable* held that, in certain cases, "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." 545 U.S., at 312, 125 S.Ct. 2363. To make the determination whether there is federal jurisdiction over the Superior Court Action here the controlling authority *Grable, Anversa*, and *Gallagher-McKee* direct the district court to consider four factors:  whether a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Grable*, 545 U.S., at 314, 125 S.Ct. 2363. A fifth factor the Supreme Court has also considered is whether allowing state courts to resolve the claim will "undermine the development of a uniform body of [federal] law. . . ." *Gunn,* 568 U.S. at 261.

16.      Where all four of the *Grable* factors are met exercising federal jurisdiction over the claims is proper because there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum," which can be vindicated without disrupting Congress's intended division of labor between state and federal courts. *Grable*, 545 U.S. at 313-14, 125 S.Ct. 2363. *See also Gunn*, 568 U.S. at 258, 133 S. Ct. at 1065 (when "a claim finds its origins" in state law, there is "a special and small category of cases in which arising under jurisdiction still lies."); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1569–70, 194 L. Ed. 2d 671 (2016) (same). Each of the four *Grable* factors as well as the *Gunn* consideration for exercising federal jurisdiction is satisfied here.

**A.  The claims the Commonwealth alleges implicate significant embedded federal issues, which are essential parts of the claims.**

17.      ***Factor (1): a federal issue is necessarily raised***. Plaintiff alleges a "consumer's contract with Global authorizes Global (1) to establish a savings account for the consumer, (2) to deposit funds from the consumer's primary bank account into the Global savings account, and (3)

to distribute funds from the Global savings account to pay the consumer's creditors." *See* Complaint ¶ 58. Although the "account" is the consumer's, not Global's, these allegations recognize that Global is a DAP. Plaintiff contends nevertheless, that by acting as a DAP, "Global is engaging in unfair and deceptive acts and practices in violation of G.L.c. 93 A, § 2(a)."

18.    Specifically Plaintiff complains Global is:

(1) distributing settlement fees to DMB without obtaining authorization from consumers; (2) distributing settlement fees to DMB in advance of consumers having made at least one payment pursuant to settlements negotiated by DMB; and (3) distributing settlement fees to DMB based on the amounts of consumers' debts at the time of settlement rather than enrollment, prohibitions placed on debt settlement providers under the TSR. Through these unfair and deceptive acts and practices, Plaintiff further alleges Global provided substantial assistance or support to DMB [the debt settlement provider] when Global knew or consciously avoided knowing of the unfair and deceptive acts and practices described in Counts 1 and 2.

*See* Complaint ¶¶ 128 & 129.

19.    These and other questions Plaintiff raises require determining whether Global's status as a DAP under the TSR can be undermined by Plaintiff's proposed application of the CPA. In the final analysis, a question relating to a particular federal law is necessarily raised if a plaintiff's right to relief requires application of that law. *See Gunn*, 568 U.S. at 259, 133 S.Ct. 1059. Resolution of Plaintiff's assertions and claims that what Global does as a DAP under consumer contacts is unfair and deceptive and deciding whether any relief is appropriate here also requires application of federal statutes and rules promulgated thereunder, including the FTC's TSR, as amended, as well as the Telemarketing and Consumer Fraud and Abuse Prevention Act, the Consumer Financial Protection Act of 2010 (Title X of Dodd-Frank, 12 U.S.C. Ch. 53), and the Federal Deposit Insurance Act, 12 U.S.C. Ch. 16, as Global is directly regulated under all of these laws.

20.     Here each claim not only implicates these embedded federal laws, but also requires application of the TSR to ensure uniformity in the application of this body of federal law. Even the CPA, which the Superior Court Action alleges Global violated, expressly requires Plaintiff to look to the FTC and its *federal* rules, regulations, and interpretations. *See* Mass. Gen. Laws ch. 93A, § 2(c). To establish liability and to obtain relief thereunder requires a court to draw the conclusion Global violated the TSR (or other federal law) – as a matter of law. *See, e.g., Klairmont v. Gainsboro Rest., Inc.*, 465 Mass. 165, 171, 987 N.E.2d 1247, 1253 (2013)("A ruling that conduct violates the CPA "is a legal, not a factual, determination."). Making that determination, however, requires a conclusion that what Global is lawfully permitted to do under federal law and in the other states in the Union is unlawful, that is, unfair and deceptive, but only in Massachusetts and solely based on the application of the CPA. Allowing the Superior Court of the Commonwealth of Massachusetts to resolve the claims here solely using the CPA will "undermine the development of a uniform body of [federal] law," something the U.S. Supreme Court and a court in this district have frowned on. *Gunn*, 568 U.S. at 261; *Gallagher-McKee,* No. CV 17-10184-MLW, 2018 WL 1542053, at *2.

21.     Ultimately, the clash of the TSR with the CPA raises substantial questions of embedded federal law, questions which are "not only important to the parties, but important to the federal system." *Gallagher-McKee*, No. CV 17-10184-MLW, 2018 WL 1542053, at *2. For example, allowing the Superior Court to decide as a matter of law and without regard to the TSR that the CPA prohibits Global from acting as a DAP would *a fortiori* result in a new interpretation of the TSR. Such a legal conclusion would have broader and substantial significance because it would be tantamount to a challenge to the propriety of the TSR itself. A claim raises a "substantial" federal question when (a) its outcome "could turn on a new

interpretation of a federal statute or regulation which will govern a large number of cases" and "could be settled once and for all" if adjudicated in a federal forum; or (b) presents an issue of federal law whose resolution "has broader significance for the federal government," such as a claim that "directly challenges the propriety" of a federal administrative action." *Municipality of Mayagüez v. CPDO*, 726 F.3d 8, 13-14 (1st Cir. 2013). The first *Grable* factor is satisfied here.

22.     *Factor (2): a federal issue is actually disputed.* Plaintiff here filed a seemingly simple and deceptively plain state lawsuit under the CPA. Yet, unsurprisingly the allegations of the Complaint track the TSR, but make no mention of it. Plaintiff is either ignoring or tacitly disputing Global's role as a DAP under FTC promulgated regulations and rules, even though Chapter 93A recognizes the FTC as the guiding force in interpreting unfair and deceptive practices in this area. The fact that Plaintiff brought this action in Superior Court without even mentioning, for example, the FTC or more importantly the TSR suggests the Plaintiff does not believe federal law has any effect on how Global is regarded under Chapter 93A or other Commonwealth law, or on the outcome of this case.

23.     These federal laws and issues will significantly control determination of the matters alleged about Global's business model and Global's status as a DAP administering "special purpose accounts," which Plaintiff places squarely at issue. *See* Complaint e.g., at ¶¶ 121, 128, & 129. A federal question is actually disputed where the parties disagree about the federal law's effect on the outcome of the case – as is the case here. *See Grable*, 545 U.S. at 315, 125 S.Ct. 2363

24.     For example, in *Grable*, after removal the parties disputed whether the former landowner received proper notice, as required by a federal statute, before the Internal Revenue Service ("IRS") sold his property. *Id.* at 310–11, 125 S.Ct. 2363. The owner argued that personal

service was required under the federal statute, and the tax-sale purchaser disagreed, arguing that service by certified mail was sufficient. *Id*. at 311, 125 S.Ct. 2363. If the federal statute required personal service, the owner would prevail on his quiet title claim and retain the property. *Id*. The Supreme Court held the suit presented a removable federal question.

25.     Here Global is pointing out that federal law – the TSR promulgated under the authority of the Telemarketing and Consumer Fraud and Abuse Prevention Act – provided it with its status as a DAP. If Global is doing what federal law requires of Global, Global will prevail. Ignoring the TSR as Plaintiff seems to do cannot and does not trivialize these issues implicating federal law. Plaintiff's demonization of Global for doing precisely what federal law enables and authorizes it to do necessarily implicates questions of federal law. The second *Grable* factor is satisfied.

21.     ***Factor (3): a federal issue is substantial***.  The effectiveness of the FTC's comprehensive uniform nationwide regulatory scheme will be compromised in the absence of considering and applying these federal laws and regulations to Plaintiff's CPA claims, each of which substantially and necessarily embody federal laws. Those federal laws are the manifestation of Congress's intentions and actions, and the resulting agency regulatory scheme put in place to enforce what Congress did uniformly throughout the country. For a question to be substantial in the context of federal question jurisdiction, "it is not enough that the federal issue be significant to the particular parties in the immediate suit." *Gunn*, 568 U.S. at 260, 133 S.Ct. 1059.  Rather, "the substantiality inquiry . . . looks instead to the importance of the issue to the federal system as a whole." *Id.*

26.     The relationship of Chapter 93A to the FTC's TSR affects the federal system and its intended uniform design as a whole. The substantial question here involves a state's ability to

first ignore and then to override federal law and undermine a uniform nationwide industry structure on which the federal regulation depends.  Often, substantial questions raise "pure issues of law . . . that [can] be settled once and for all." *Gunn,* 568 U.S. at 260, 133 S.Ct. 1059 (quoting Hart and *Wechsler's The Federal Courts and the Federal System* 65 (5th ed. 2003 Supp. 2005). Here Plaintiff seeks to hold Global responsible for a violation, as a pure question of law, i.e., the Massachusetts CPA. Any consideration of the alleged violation cannot, however, be made without evaluating Federal law too and the circumstances fashioned by reliance on federal law. The third *Grable* factor is met.

27.     *Factor (4): the federal issue is capable of resolution in federal court without disrupting the federal-state balance*. As the foregoing illustrates, Plaintiff's intended application of the CPA – in a vacuum and without considering the effect, for example, of the TSR –  would completely undermine the uniformity of the federal regulatory scheme, which established the DAP role and authorized Global's conduct in that role. Plaintiff's Complaint turns the DAP construct on its head and so implicates and necessarily raises, for example, issues under the FTC's TSR that are actually disputed, substantial, and capable of resolution in federal court without disrupting the federal-state balance approved by Congress. The fourth *Grable* factor is met.

**B.  The regulation of dedicated account processing servicers is pre-empted by federal law, such that any attempt at state regulation of DAP servicers by treating them as debt management providers necessarily raises a federal question.**

28.     As the foregoing illustrates, there is a comprehensive federal law scheme regulating the conduct Plaintiff asserts is unfair and deceptive. That federal scheme allows Global to engage in the very conduct Plaintiff condemns. The TSR specifically recognizes the acceptable role that DAPs play in the nationwide consumer protection regime erected by the

TSR, and specifically mentions Global by name. *See* Vol. 75, Federal Register No. 153, p. 48490

and fn. 445. Fundamentally the TSR sets up DAPs as a buffer between consumers and debt

settlement providers as a means of preventing improper charges. *See,* 16 CFR § 310.4(a)(5)(ii).

29.     The Superior Court Action seeking to apply the CPA to what Global does puts the

CPA directly in conflict with this federal scheme and makes the CPA standing alone

inapplicable. Chapter 93A does not make Global's conduct unfair and deceptive; rather, it

exempts a defendant's conduct from liability if the conduct as in this case is authorized under

another statute.

30.     Specifically, Chapter 93A, § 3 provides that "nothing in this chapter shall apply to

transactions or action otherwise permitted under laws as administered by a regulatory board or

officer acting under statutory authority of the commonwealth or of the United States." *O'Hara v.*

*Diageo-Guinness, USA, Inc.*, No. CV 15-14139-MLW, 2018 WL 1542367, at *4 (D. Mass. Mar.

29, 2018). As the court in *McGonagle v. Home Depot, U.S.A., Inc.* explained it, a strong

"indicator of the ***inapplicability*** of c. 93A liability would be the presence of a comprehensive and

specific alternate scheme of regulation of the targeted conduct in actual or potential conflict with

the standards and remedies of the chapter." 75 Mass. App. Ct. 593, 602, 915 N.E.2d 1083, 1090

(2009)(emphasis supplied). So making a determination under Section 3 of the CPA necessarily

involves a "deep-dive" into federal law, including the FTC's TSR. Section 3 enables a defendant

to rely on regulators' authoritative and particularized determination that its product or conduct is

not unfair or deceptive, *O'Hara*, No. CV 15-14139-MLW, 2018 WL 1542367, at *5, a reality

around which Plaintiff here has tried to plead.

31.     Federal preemption of a specific area of the law is a recognized exception to the

well-pleaded complaint rule. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 64, 107 S.Ct.

1542, 1546 (1987). This form of "preemption" should not be confused with pre-emption of all state law claims and regulations, such that states are precluded from acting at all. *E.g., Lowe's Home Centers, Inc. v. Olin Corp.,* 313 F.3d 1307, 1313 (11th Cir. 2002). Rather, in the context of removal, the term pre-emption is applied when application of state law would "completely undermine[]" the federal regulatory scheme, *Metropolitan,* 481 U.S. at 64, 107 S.Ct. at 1547, or " where it is impossible for a private party to comply with both state and federal requirements," *English v. Gen. Elec. Co.,* 496 U.S. 72, 79, 110 S. Ct. 2270, 2275, 110 L. Ed. 2d 65 (U.S. 1990).

32. The TSR very carefully separates out the function of the DAP, and actually employs that permissible function as a layer of consumer protection. Plaintiff's claim is predicated on ignoring, dismantling, or undermining the uniform nationwide structure of the industry mandated by the FTC's TSR and its distinction between a DAP's role and that of a debt-settlement company. This implicates federal law in three distinct ways.

33. First, it undermines the FTC's TSR by forbidding what the TSR expressly permits. Second, the conflation of the DAP with the debt-settlement company negates the structural framework of the regulation set forth in the FTC's TSR such that the two cannot co-exist in a federalist system. And third, the Complaint would effectively over-rule those portions of the FTC's TSR affecting DAPs within the territorial bounds of the Commonwealth of Massachusetts.

## IV. THE RULE OF UNANIMITY IS SATISFIED

34. Pursuant to 28 U.S.C. § 1446, a defendant wishing to remove an action to federal court must file a notice of removal within 30 days of the defendant's receipt of the initial pleading or summons. Where a complaint names multiple defendants, all of the defendants must consent to the removal. *See* 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely

under section 1441(a), all defendants *who have been properly joined and served* must join in or consent to the removal...."); (emphasis supplied); *Doe v. McGuire*, 289 F. Supp. 3d 266, 269 (D. Mass. 2018).

35.     Here there are just two defendants, Global, the removing party, and DMB, who consents to removal.[1] Thus, the rule of unanimity is satisfied.

## V.  REMOVAL IS TIMELY AND NOTICE HAS BEEN GIVEN

36.     This Notice of Removal is timely. Global is filing this Notice within ten (10) days after learning of the Summons and Complaint and well within one (1) year after the commencement of the action, as permitted by 28 U.S.C. § 1446(b).

37.     Global will promptly give written notice of the filing this Notice of Removal to all adverse parties and will file a copy of the Notice of Removal with the Suffolk County, Massachusetts Superior Court, as required by 28 U.S.C. § 1446(d).

## VI. COPIES OF PROCESS, PLEADINGS, AND ORDERS

38.     Global has attached as Composite Exhibit B to this Notice of Removal copies of all "process, pleadings, and orders" served on it in the Superior Court Action filed in Suffolk County, Massachusetts as required by 28 U.S.C. § 1446(a) and Local Rules 5.4(f) and Rule 81.1. [2]

## VII.    VENUE

---

[1] *See* Exhibit A, DMB's Declaration of joinder in removal.

[2] Local Rule 5.4(f) provides: "**State Court Record in Removal Proceedings.** Within 28 days after filing a notice of removal in a civil action, a party removing an action under 28 U.S.C. §§ 1441-52 must file certified or attested copies of all docket entries, records, and proceedings in the state court in paper format. Unless exempt or otherwise ordered by the court, the removing party must also file a disk with the clerk's office containing the state court record in PDF format." Global will comply with this rule within the time frame specified.

39.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446(a) because the Superior Court Action is pending in Suffolk County, Massachusetts, which falls within the United States District Court for Massachusetts.

## VIII.   NO WAIVER OF DEFENSES

40.     Nothing in this Notice shall be interpreted as a waiver or relinquishment of Global's right to assert any defense or affirmative matter, including without limitation a motion to dismiss pursuant to Federal Rule of Civil Procedure 12 or a motion to compel arbitration.

## IX. CONCLUSION

41.     For the foregoing reasons, Global Client Solutions, LLC hereby removes this case to the United States District Court of Massachusetts.

Respectfully submitted,

GLOBAL CLIENT SOLUTIONS, LLC

By its attorneys,


/s/ Thomas E. Lent
Thomas E. Lent
Marathas Barrow Weatherhead Lent LLP
One Financial Center, 15th Floor
Boston, Massachusetts 02111
Telephone: (617) 830-5460
tlent@marbarlaw.com
*Counsel for Global Client Solutions, LLC*

Dated: May 29, 2018

## CERTIFICATE OF SERVICE

The undersigned served this Notice of Removal on May 29, 2018 via regular U.S. Mail to

the following participants:

Benjamin Golden (BBO #686119)
Assistant Attorney General
Max Weinstein (BBO #600982)
Chief, Consumer Protection Division
One Ashburton Place
Boston, Massachusetts 02108
Telephone (Golden): (617) 963-2661
Telephone (Weinstein): (617) 963-2499
*Benjamin.Golden@state.ma.us*
*Max.Weinstein@state.ma.us*
*Counsel for Plaintiff*


Shepard Davidson
Burns & Levinson LLP
125 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-3000
Fax: (617) 345-3299
sdavidson@burnslev.com
*Counsel for DMB Financial, LLC*


/s/ Thomas E. Lent
Thomas E. Lent