UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

COMMONWEALTH OF MASSACHUSETTS,

                          Plaintiff,

v.

DMB FINANCIAL, LLC and GLOBAL CLIENT
SOLUTIONS, LLC,

                         Defendants.

C.A. No. 1:18-cv-11120-ADB

**COMMONWEALTH'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO REMAND**

MAURA HEALEY
ATTORNEY GENERAL

Benjamin Golden (BBO #686119)
Assistant Attorney General
Max Weinstein (BBO #600982)
Chief, Consumer Protection Division
One Ashburton Place
Boston, MA 02108
Telephone (Golden): (617) 963-2661
Telephone (Weinstein): (617) 963-2499
Email: Benjamin.Golden@state.ma.us
Email: Max.Weinstein@state.ma.us

Date: June 20, 2018

## Table of Contents

I.     **Introduction** ......................................................................................................... **1**

II.    **State Court Proceedings** ...................................................................................... **1**

III.   **Standard for Removal** ......................................................................................... **3**

IV.   **Legal Background** ................................................................................................ **4**

     A.   The Massachusetts Consumer Protection Act.................................................. 4

     B.   The Telemarketing Sales Rule ........................................................................ 5

V.     **Argument** ............................................................................................................. **6**

     A.   Ordinary Federal Preemption Defenses Do Not Permit Removal of State Law
        Claims. ............................................................................................................ 7

     B.   The *Grable* Doctrine Is Inapplicable to the Commonwealth's Claims............................ 8

     C.   State Law Claims That Incorporate Federal Standards or Could Be Based on
        Violations of Federal Law Do Not Arise Under Federal Law. ......................... 11

VI.   **Request for Costs and Expenses** ...................................................................... **14**

VII.  **Conclusion** ......................................................................................................... **16**

**Table of Authorities**

**Federal Cases**

*Adams v. Beacon Hill Staffing Group, LLC,*
No. 15-cv-11827-ADB, 2015 WL 6182468 (D. Mass. Oct. 21, 2015)...................................15

*Arthur D. Little, Inc. v. Dooyang Corp.,*
147 F.3d 47 (1st Cir. 1998) ............................................................................................10

*Bally v. National Collegiate Athletic Ass'n,*
707 F.Supp. 57 (1988)....................................................................................................14

*Baum v. Keystone Mercy Health Plan,*
826 F. Supp.2d 718 (E.D. Pa. 2011) .............................................................................11

*Bonas v. Town of North Smithfield,*
265 F.3d 69 (1st Cir. 2001) ..............................................................................................3

*California v. H&R Block, Inc.,*
No. C 06-2058 SC, 2006 WL 2669045 (N.D. Cal. Sept. 18, 2006)................................3, 11

*Caterpillar Inc. v. Williams,*
482 U.S. 386 (1987)......................................................................................................3, 8

*Chick Kam Choo v. Exxon Corp.,*
486 U.S. 140 (1988)........................................................................................................10

*Children's Hosp. v. Kindercare Learning Ctrs.,*
360 F. Supp.2d 202 (D. Mass. 2005) ...............................................................................7

*Danca v. Private Health Care Sys., Inc.,*
185 F.3d 1 (1st Cir. 1999) ...............................................................................................3

*Dean v. Compass Receivables Mgmt. Corp.,*
148 F.Supp.2d 116 (D. Mass. 2001) ..............................................................................13

*Doe v. Bos. Univ.,*
No. 17-CV-10520-LTS, 2017 WL 2255752 (D. Mass. May 23, 2017)................................10

*Empire Health-choice Assurance, Inc. v. McVeigh,*
547 U.S. 677 (2006)..........................................................................................................9

*Fayard v. Ne. Vehicle Servs., LLC,*
533 F.3d 42 (1st Cir. 2008) ..............................................................................................8

*Flagg v. Ali-Med, Inc.,*
728 F. Supp. 2d 1 (D. Mass. 2010) ..................................................................................8

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust,*
 463 U.S. 1 (1983) ............................................................................................ 3

*FTC v. Chapman,*
 714 F.3d 1211 (10th Cir. 2013) ...................................................................... 6

*Gentile v. Biogen Idec, Inc.,*
 934 F. Supp. 2d 313 (D. Mass. 2013) ........................................................... 15

*GeoVantage, Inc. v. SimWright, Inc.,*
 No. 13–12178–RWZ, 2014 WL 183667 (D. Mass. Jan. 16, 2014) ......................... 15

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,*
 545 U.S. 308 (2005) ................................................................................ 9, 10, 12

*Gunn v. Minton,*
 568 U.S. 251 (2013) ..................................................................................... 9, 10

*Harvard Real Estate–Allston, Inc. v. KMART Corp.,*
 407 F. Supp.2d 317 (D. Mass. 2005) ............................................................ 15

*Hunneman Real Estate Corp. v. E. Middlesex Ass'n of Realtors, Inc.,*
 860 F. Supp. 906 (D. Mass. 1994) ................................................................ 13

*In re Standard & Poor's Rating Agency Litig.,*
 23 F. Supp.3d 378 (S.D.N.Y. 2014) ............................................................... 4

*Kasparian v. Transunion,*
 No. CV 15-13560-PBS, 2016 WL 4967688 (D. Mass. Sept. 16, 2016) ................ 8

*Kauders v. Uber Tech., Inc.,*
 No. CV 16-11659-FDS, 2017 WL 903455 (D. Mass. Mar. 7, 2017) ................... 3

*Laughlin Kennel Co. v. Gatehouse Media Inc.,*
 202 F. Supp.3d 178 (D. Mass. 2016) ............................................................ 14

*López-Muñoz v. Triple-S Salud, Inc.,*
 754 F.3d 1 (1st Cir. 2014) ......................................................................... 3, 8

*Martin v. Franklin Capital Corp.,*
 546 U.S. 132 (2005) ................................................................................ 14, 15

*Massachusetts v. V&M Management, Inc.,*
 752 F.Supp. 519 (D. Mass. 1990) ............................................................ 12, 13

*Merrell Dow Pharms. Inc. v. Thompson,*
 478 U.S. 804 (1986) ................................................................................ 12, 13

*Moore v. Chesapeake & Ohio Ry. Co.*,
  291 U.S. 205 (1934) ........................................................................ 12

*Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc.*,
  726 F.3d 8 (1st Cir. 2013) ............................................................... 10

*Nevada v. Bank of Am. Corp.*,
  672 F.3d 661 (9th Cir. 2012) ..................................................... 4, 12

*Ophnet, Inc. v. Lamensdorf*,
  No. 05–10970–DPW, 2005 WL 3560690 (D. Mass. Dec. 27, 2005) ................................. 15

*Rains v. Criterion Sys., Inc.*,
  80 F.3d 339 (9th Cir. 1996) ............................................................. 12

*Rósello González v. Calderón Serra*,
  398 F.3d 1 (1st Cir. 2004) ................................................................ 3

*Schwesinger v. Hurley*,
  No. 13-CV-11436-DPW, 2014 WL 1311756 (D. Mass. Mar. 31, 2014) ............................... 15

*Sullivan v. Am. Airlines, Inc.*,
  424 F.3d 267 (2d Cir. 2005) ............................................................... 7

*Ten Taxpayer Citizens Grp. v. Cape Wind Assocs.*,
  373 F.3d 183 (1st Cir. 2004) .............................................................. 8

*Texas v. Melton*,
  No. A-16-CA-863-SS, 2016 WL 4718434 (W.D. Tex. Sept. 9, 2016) ............................... 16

*West Virginia ex rel. McGraw v. CVS Pharm., Inc.*,
  646 F.3d 169 (4th Cir. 2011) .............................................................. 4

*Youtsey v. Avibank Mfg., Inc.*,
  734 F. Supp.2d 230 (D. Mass. 2010) ....................................................... 14


**State Cases**

*Aspinall v. Phillip Morris Cos.*,
  813 N.E.2d 476 (Mass. 2004) ......................................................... 5, 11

*Bos. Hous. Auth. v. Garcia*,
  871 N.E.2d 1073 (Mass. 2007) ............................................................ 11

*Commonwealth v. Amcan Enters., Inc.*,
  712 N.E.2d 1205 (Mass. App. Ct. 1999) .................................................... 5

*Commonwealth v. DeCotis*,
    316 N.E.2d 748 (Mass. 1974) ........................................................... 5

*Fleming v. Nat'l Union Fire Ins. Co.*,
    837 N.E.2d 1113 (Mass. 2005) ........................................................ 11

*Kattar v. Demoulas*,
    739 N.E.2d 246 (Mass. 2000) ........................................................ 4, 5

*Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*,
    640 N.E.2d 1101 (Mass. 1994) ......................................................... 5

*Massachusetts v. H&R Block, Inc., et. al.*,
    No. 08-2474-BLS1, 2008 WL 5975053 (Mass. Super. Nov. 10, 2008) (Gants, J.),
    aff'd No. 09-P-134, 2009 WL 3460373 (Mass. App. Ct. Oct. 29, 2009) (unpublished
    decision) .............................................................................................. 4

*McGonagle v. Home Depot USA, Inc.*,
    915 N.E.2d 1083 (Mass. App. Ct. 2009) ......................................... 11

*Mobil Oil Corp. v. Att'y Gen.*,
    280 N.E.2d 406 (Mass. 1972) ......................................................... 11

*Purity Supreme, Inc. v. Att'y Gen.*,
    407 N.E.2d 297 (Mass. 1980) ........................................................... 5

*Reckis v. Johnson & Johnson*,
    28 N.E.3d 445 (Mass. 2015) ........................................................... 11

*Renovator's Supply, Inc. v. Sovereign Bank*,
    892 N.E.2d 777 (Mass. App. Ct. 2008) ............................................. 4

*Sawash v. Suburban Welders Supply Co.*,
    553 N.E.2d 894 (Mass. 1990) ......................................................... 11

## Federal Regulations

16 C.F.R. § 310.3 ...................................................................................... 6

16 C.F.R. § 310.3(a)(3) .............................................................................. 6

16 C.F.R. § 310.3(b) .................................................................................. 6

16 C.F.R. § 310.4 ...................................................................................... 6

16 C.F.R. § 310.4(a)(5) .............................................................................. 6

16 C.F.R. § 310.7(b) ............................................................................................... 8

**Federal Laws**

28 U.S.C. § 1331 ...................................................................................... 1, 10, 12

28 U.S.C. § 1441(a) ............................................................................................ 3

28 U.S.C. § 1446(d) ............................................................................................ 2

28 U.S.C. § 1447(c) ...................................................................................... 1, 14

**State Laws**

M.G.L. c. 93A, § 2(a)..................................................................................... 4, 9

M.G.L. c. 93A, § 2(b) ......................................................................................... 5

M.G.L. c. 93A, § 2(c)......................................................................................... 9

M.G.L. c. 93A, § 3 ........................................................................................... 11

## I.     Introduction

The Commonwealth of Massachusetts (the "Commonwealth"), by and through its Attorney General, Maura Healey, brought a civil enforcement action in Suffolk Superior Court against Global Client Solutions, LLC ("Global"), along with DMB Financial, LLC ("DMB"), a "debt settlement" company. The Commonwealth alleges that Global wrongly disbursed inflated "settlement fees" to DMB from consumer savings accounts without consumers' authorization and engaged in other unfair and deceptive conduct that violates the Massachusetts Consumer Protection Act, M.G.L. c. 93A ("Chapter 93A"). Global has now removed the action to this Court, claiming that the Commonwealth's Chapter 93A claims "aris[e] under" federal law within the meaning of 28 U.S.C. § 1331.

Global's argument is meritless and contradicts black-letter law. Global's notice of removal mischaracterizes the Commonwealth's allegations and legal claims, misstates the governing law, and demonstrates that Global's true intention in removing the action is not to obtain the Court's jurisdiction, but rather to delay and frustrate the Commonwealth's prosecution of this enforcement action in state court.

For the reasons set forth below, the Commonwealth respectfully requests that the Court remand the action to Suffolk Superior Court and award the Commonwealth all "just costs and any actual expenses" the Commonwealth incurred as a result of Global's baseless removal. 28 U.S.C. § 1447(c).

## II.     State Court Proceedings

On May 14, 2018, the Commonwealth commenced this civil enforcement action in Suffolk Superior Court against DMB and Global exclusively alleging violations of state law, namely, Chapter 93A. As part of the same action, the Commonwealth also moved for a

preliminary injunction against DMB to prevent it from engaging in unfair and deceptive conduct that continues to harm consumers. The Superior Court scheduled the Commonwealth's motion for a hearing on May 24, 2018. DMB requested to postpone the hearing, and the Commonwealth agreed. On May 29, 2018, before a new hearing date could be selected, Global removed the action to this Court with DMB's consent. In doing so, Global has delayed the hearing on the Commonwealth's motion for a preliminary injunction and put an immediate stop to further proceedings in state court. 28 U.S.C. § 1446(d) ("the State court shall proceed no further unless and until the case is remanded").

This case concerns DMB's "debt settlement program." *Commonwealth's Complaint* at ¶ 1. DMB markets the program to consumers who are deep in debt and struggling to pay their creditors. *Id.* DMB promises that consumers who enroll in the program can be "debt free" in 24-48 months. *Id.* at ¶ 4. DMB directs consumers to stop paying their debts and directs them instead to make monthly payments into "savings" accounts established and maintained by Global, for which Global charges monthly fees. *Id.* at ¶¶ 3, 60. Global is DMB's payment processor and routinely transfers funds in consumers' savings accounts to DMB as "settlement fees." *Id.* at ¶ 72. The Commonwealth alleges that Global is violating Chapter 93A by: (1) transferring consumer savings to DMB without obtaining authorization from the consumers to whom these funds belong; (2) transferring consumer savings to DMB before consumers have even started making payments pursuant to a DMB-negotiated settlement; and (3) transferring consumer savings to DMB to pay for wrongly inflated "settlement fees" – fees that were calculated on the basis of the amounts consumers owed when their debts were settled rather than the amounts they owed when they enrolled in DMB's debt settlement program. *Id.* at ¶¶ 127-128. The Commonwealth further alleges that DMB enrolls and collects fees from consumers who cannot

afford its program, and that consumers routinely drop out of the program without settling their debts. *Id.* at ¶¶ 6, 49. As a result, the fees that Global transfers to DMB result in little or no benefit for consumers.

## III.  Standard for Removal

"Under our dual-sovereign system, the plaintiff is the master to decide what law he will rely upon" and "has the prerogative to rely on state law alone although both federal and state law may provide a cause of action." *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999) (internal quotation marks omitted); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). When a civil action is filed in state court, removal to federal court is proper only if the federal court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a).

"Federal courts are courts of limited jurisdiction, and therefore must be certain that they have explicit authority to decide a case." *Rósello González v. Calderón Serra*, 398 F.3d 1, 15 (1st Cir. 2004), quoting *Bonas v. Town of North Smithfield*, 265 F.3d 69, 73 (1st Cir. 2001). Accordingly, "[t]here is a presumption against removal, and any doubts as to this Court's jurisdiction must be resolved in favor of remand." *Kauders v. Uber Tech., Inc.*, No. CV 16-11659-FDS, 2017 WL 903455, at *2 (D. Mass. Mar. 7, 2017). Critically, "the burden to prove that a federal question has been pled lies with the party seeking removal." *Rósello González*, 398 F.3d at 11; *see also López-Muñoz v. Triple-S Salud, Inc.*, 754 F.3d 1, 9 (1st Cir. 2014). Moreover, where, as here, an enforcement action is brought by a State in state court to protect its own citizens, the "bar is further raised." *California v. H&R Block, Inc.*, No. C 06-2058 SC, 2006 WL 2669045, at *2 (N.D. Cal. Sept. 18, 2006), citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21 n.22 (1983) ("[C]onsiderations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule

demands it"). *See also In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp.3d 378, 392 (S.D.N.Y. 2014) (concluding that the importance of judicial scrutiny in the removal context "is at its zenith where, as here, the suit was brought by a State itself"). Indeed, courts have concluded that when a State Attorney General files an enforcement action in state court to enforce its own consumer protection laws, the State's "claim of sovereign protection from removal arises in its most powerful form." *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012), quoting *West Virginia ex rel. McGraw v. CVS Pharm., Inc.*, 646 F.3d 169, 178 (4th Cir. 2011).

**IV.** **Legal Background**

**A. The Massachusetts Consumer Protection Act**

This action was brought exclusively under Chapter 93A, which broadly prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L. c. 93A, § 2(a). The statute is "sui generis." *Kattar v. Demoulas*, 739 N.E.2d 246, 260 (Mass. 2000). *See also Renovator's Supply, Inc. v. Sovereign Bank*, 892 N.E.2d 777, 787 (Mass. App. Ct. 2008). "Chapter 93A is a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights. It is neither wholly tortious nor wholly contractual in nature, and is not subject to the traditional limitations of preexisting causes of action. It makes conduct unlawful which was not unlawful under the common law or any prior statute." *Kattar*, 739 N.E.2d at 257 (internal quotation marks, brackets, and citations omitted). *See also Massachusetts v. H&R Block, Inc., et. al.*, No. 08-2474-BLS1, 2008 WL 5975053 (Mass. Super. Nov. 10, 2008) (Gants, J.), aff'd No. 09-P-134, 2009 WL 3460373 (Mass. App. Ct. Oct. 29, 2009) (unpublished decision) ("The Supreme Judicial Court has made clear that Chapter 93A was intended to be far more than a pale reflection of existing statutory and common law rights.").

4

Global's unsupported contention that "conduct that does *not* offend the FTC Act cannot be a violation of Chapter 93A" is patently false. Notice of Removal at 6 (emphasis in original). Massachusetts courts have consistently held that the Federal Trade Commission ("FTC") Act provides only a floor, not a ceiling, in the field of consumer protection. *See Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 640 N.E.2d 1101, 1106 (Mass. 1994) (noting that the Attorney General "properly could define as 'unfair' or 'deceptive' acts or practices not prohibited by the Federal Trade Commission"); *Purity Supreme, Inc. v. Att'y Gen.*, 407 N.E.2d 297, 309 (Mass. 1980) ("States are not forbidden, however, from adopting rules more restrictive than those of the FTC."). Massachusetts courts also have been clear that courts construing Chapter 93A are not bound by federal interpretations of the FTC Act when determining whether conduct is unfair or deceptive. *See Aspinall v. Phillip Morris Cos.*, 813 N.E.2d 476, 488 (Mass. 2004) (courts "need only be guided by, and not strictly adhere to, interpretations of the term 'deceptive' under Federal law"); *Commonwealth v. Amcan Enters., Inc.*, 712 N.E.2d 1205, 1209 n.9 (Mass. App. Ct. 1999) ("Massachusetts courts need not adopt Federal interpretations in their entirety but must only be guided by those interpretations"). Thus, "[a]lthough G.L. c. 93A, § 2(b), states that courts are to be guided by the Federal Trade Commission and Federal court interpretations of the Federal Trade Commission Act, unfair or deceptive conduct is best discerned 'from the circumstances of each case.'" *Kattar*, 739 N.E.2d at 257, quoting *Commonwealth v. DeCotis*, 316 N.E.2d 748, 754 (Mass. 1974).

## B.  The Telemarketing Sales Rule

Global mistakenly asserts that the Telemarketing Sales Rule ("TSR"), a regulation promulgated by the FTC, provides this Court with jurisdiction over the Commonwealth's claims. The TSR prohibits certain abusive and deceptive telemarketing practices in the provision of debt

relief services. 16 C.F.R. §§ 310.3 and 310.4. With respect to the collection of debt settlement

fees, the TSR prohibits the collection of a fee before a consumer makes at least one payment

pursuant to a settlement negotiated by a debt settlement company. 16 C.F.R. § 310.4(a)(5). In

addition, the TSR does not permit settlement fees to be calculated on the basis of the amount of a

debt owed at the time of settlement – an amount that usually will be larger as a result of a period

of substantial delinquency – but requires any fee to be calculated on the basis of the amount

owed at the time of the consumer's enrollment in the debt settlement program. *Id.* Finally, the

TSR forbids settlement fees to be distributed without authorization from the consumer. 16 C.F.R.

§ 310.3(a)(3).

Global repeatedly and falsely claims that the TSR "expressly permits" Global to act as a

"'Dedicated Account Provider' ('DAP)'" and to engage in the conduct that the Commonwealth

alleges to violate Chapter 93A. Notice of Removal at 2. This is plainly untrue. In fact, the term

"DAP" does not appear anywhere in the TSR. Instead, the TSR expressly *prohibits* any person –

including Global – from providing "substantial assistance or support" when that person "knows

or consciously avoids knowing" that a debt relief provider is violating specific provisions of the

TSR. *See* 16 C.F.R. § 310.3(b). *See generally FTC v. Chapman*, 714 F.3d 1211, 1215-19 (10th

Cir. 2013). Accordingly, Global's argument that the TSR permits it to engage in the conduct

alleged by the Commonwealth to violate Chapter 93A is not only irrelevant, but also blatantly

false.

## V.  <u>Argument</u>

The Commonwealth's claims are quintessential Chapter 93A claims that are routinely

brought by the Attorney General and adjudicated in state court. In seeking removal of these

claims, Global argues that they supposedly conflict with federal law, namely, the TSR. This

argument fails to justify removal because it is well established that conflict preemption is an ordinary defense that provides no basis for federal jurisdiction over state law claims. Global's attempt to avoid this result by invocation of the so-called *Grable* doctrine is likewise unavailing. Moreover, to the extent that Global is arguing that the Court may exercise jurisdiction over the Commonwealth's Chapter 93A claims because they could be based on violations of the TSR, the law is clear that federal courts do not have jurisdiction over state law claims simply because they incorporate federal standards or could be predicated on violations of federal law.

### A. Ordinary Federal Preemption Defenses Do Not Permit Removal of State Law Claims.

Global's primary argument for removal is its incorrect assertion that the Commonwealth's Chapter 93A claims conflict with federal law.[1] However, this argument fails because, not only is there no conflict, but even if there were, it is well established that conflict preemption – and even field preemption – are simply ordinary defenses that do not establish federal jurisdiction over state law claims. *See Children's Hosp. v. Kindercare Learning Ctrs.*, 360 F. Supp.2d 202, 207 (D. Mass. 2005) ("[C]onflict preemption is a defense to a state claim and does not create subject matter jurisdiction"); *Sullivan v. Am. Airlines, Inc.,* 424 F.3d 267, 273 (2d Cir. 2005) (citations and footnote omitted) ("Ordinary defensive preemption comes in three

---

[1] Notice of Removal at 13. *See, e.g.*, *id.* at 2 (federal law "expressly permits what this lawsuit condemns"); 4 ("Plaintiff is suing Global under the guise of [Chapter 93A] – which imposes none of either the specific requirements or the specific prohibitions Plaintiff seeks to enforce – for doing precisely what the TSR empowers, directs, and authorizes Global to do"); 5 (the Commonwealth's "legal theory" is "*inconsistent*" with the TSR) (emphasis in original); 9 (the Commonwealth's claims are "tantamount to a challenge to the propriety of the TSR itself"); 12 ("[T]here is a comprehensive federal scheme regulating the conduct Plaintiff asserts is unfair and deceptive. That federal scheme allows Global to engage in the very conduct Plaintiff condemns"); 14 (the Commonwealth's complaint "would effectively over-rule" portions of the TSR).

familiar forms: express preemption, conflict preemption, and field preemption. The Supreme

Court has left no doubt, however, that a plaintiff's suit does not arise under federal law simply

because the defendant may raise the defense of ordinary preemption."). This is true "even if the

defense is anticipated in the plaintiff's complaint, and even if both parties concede that the

federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393. The rule is so

well settled that the First Circuit has described it as "hornbook law." *Ten Taxpayer Citizens Grp.*

*v. Cape Wind Assocs.*, 373 F.3d 183, 191 (1st Cir. 2004) (citations omitted) ("It is hornbook law

that a federal defense does not confer 'arising under' jurisdiction, regardless whether that defense

is anticipated in the plaintiff's complaint.").[2]

### B. The *Grable* Doctrine Is Inapplicable to the Commonwealth's Claims.

Global's attempt to perform an end run around this well-settled rule by insisting that the

Commonwealth's Chapter 93A claims fall within the so-called *Grable* doctrine is unavailing.

---

[2] A distinct form of preemption – known as "complete preemption" – is the only form of preemption that provides a court with federal jurisdiction over state law claims. *Kasparian v. Transunion*, No. CV 15-13560-PBS, 2016 WL 4967688, at *1 (D. Mass. Sept. 16, 2016) ("Only complete preemption allows for the recharacterization of the plaintiff's state law claims into federal law claims."); *Flagg v. Ali-Med, Inc.*, 728 F. Supp. 2d 1, 5 (D. Mass. 2010) (citation omitted) ("It is important to distinguish between conflict preemption and complete 5*5 preemption. As germane here, conflict preemption does not provide a basis for federal jurisdiction and complete preemption does."). As described by the First Circuit, "[t]he doctrine of complete preemption is conceptually distinct from the doctrine of ordinary (or defensive) preemption: the latter defends against a plaintiff's local-law claims without any jurisdictional ramifications, but the former clears a path—albeit one that is rarely traversed successfully—into federal court. The linchpin of the complete preemption analysis is whether Congress intended that federal law provide the exclusive cause of action for the claims asserted by the plaintiff." *López-Muñoz*, 754 F.3d at 5. *See Fayard v. Ne. Vehicle Servs., LLC*, 533 F.3d 42, 45-46 (1st Cir. 2008) (footnote omitted) (noting that the doctrine of complete preemption "is well established, although perhaps poorly named, since ordinary 'defensive' preemption may also be 'complete,' as where Congress 'occupies the field,' thereby blocking state regulation"). Here, there can be no doubt that the doctrine of complete preemption does not apply in this case if for no other reason than the TSR specifically provides that it does not "prohibit any attorney general or other authorized state official from proceeding in state court on the basis of an alleged violation of any civil or criminal statute of such state." 16 C.F.R. § 310.7(b).

Notice of Removal at 6-12. That narrow doctrine provides that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *Empire Health-choice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006) (describing this category of cases as "special and small"); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313-14 (2005) (category is "slim").

Contrary to Global's argument, the doctrine is inapplicable here because the Commonwealth's Chapter 93A claims do not raise an issue of federal law. As discussed above, liability under Chapter 93A does not turn on whether the alleged conduct violates federal law. *See Kattar*, 739 N.E.2d at 257; *Aspinall*, 813 N.E.2d at 488; *Amcan Enters.*, 712 N.E.2d at 1209 n.9. And Global cannot change this fact by claiming that the Commonwealth's claims are preempted by federal law. *See Pinney v. Nokia, Inc.*, 402 F.3d 430, 446 (4th Cir. 2005) (explaining that federal preemption does not convert state law claims "into ones arising under federal law").[3]

Moreover, even if that were not the case, Global has failed to demonstrate, as it must, that the Commonwealth's claims raise a "substantial" federal issue, *i.e.*, an issue that is "significant to

---

[3] Global's contention that "Chapter 93A neither imposes on Global any of the duties [the Commonwealth] seeks to impose nor prohibits any of the conduct [the Commonwealth] seek to restrain" is similarly misguided. Notice of Removal at 3. As discussed above, Chapter 93A broadly prohibits unfair and deceptive acts or practices in the conduct of any trade or commerce. *See* M.G.L. c. 93A, § 2(a). The fact that the Attorney General has not issued industry-specific regulations pursuant to her authority under M.G.L. c. 93A, § 2(c), does not relieve Global of its obligation to comply with Chapter 93A. Indeed, it is well established that "[p]art of the duty of enforcing consumer protection legislation 'is to discover and make explicit those unexpressed standards of fair dealing which the conscience of the community may progressively develop.'" *Green v. Blue Cross and Blue Shield of Mass, Inc.*, 713 N.E.2d 992, 996 (Mass. App. Ct. 1999), quoting *DeCotis*, 316 N.E.2d at 754.

the federal system as a whole." *Gunn*, 568 U.S. at 264. As alleged in the Commonwealth's

complaint, this case concerns whether Global and DMB failed to comply with Chapter 93A, and,

therefore, its "outcome will be largely, if not wholly, fact-bound." *Doe v. Bos. Univ.*, No. 17-CV-

10520-LTS, 2017 WL 2255752, at *2 (D. Mass. May 23, 2017) (claims did not present a

"substantial" federal issue in part because, "[e]ven assuming this case could turn on a new

interpretation of [a federal regulation], that interpretation would not 'govern a large number of

cases' so as to affect the federal system as a whole; on the contrary, because this case is about the

adequacy of BU's policies as implemented (or not), its outcome will be largely, if not wholly,

fact-bound"). *See generally Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 55 (1st Cir.

1998) (internal quotation marks omitted) ("Chapter 93A liability is decided case-by-case, and

Massachusetts courts have consistently emphasized the fact-specific nature of the inquiry.").[4]

Finally, allowing Global to remove this action would seriously disrupt the division of

responsibilities between state and federal courts that Congress approved in 28 U.S.C. § 1331. *See

Grable*, 545 U.S. at 313-14 ("But even when the state action discloses a contested and substantial

federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal

issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with

congressional judgment about the sound division of labor between state and federal courts

governing the application of § 1331."). The Supreme Court has been clear that "when a state

proceeding presents a federal issue, even a pre-emption issue, the proper course is to seek

resolution of that issue by the state court." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 149-

50 (1988). Indeed, Massachusetts state courts regularly and capably review claims of federal

---

[4] *Compare Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc.*, 726
F.3d 8, 13-14 (1st Cir. 2013) (describing the types of state law claims that are "more likely" to
contain a "substantial" federal issue).

preemption. *See, e.g.*, *Mobil Oil Corp. v. Att'y Gen.*, 280 N.E.2d 406, 412-16 (Mass. 1972);

*Sawash v. Suburban Welders Supply Co.*, 553 N.E.2d 894, 896-98 (Mass. 1990); *Bos. Hous.*

*Auth. v. Garcia,* 871 N.E.2d 1073, 1077-80 (Mass. 2007); *Reckis v. Johnson & Johnson*, 28

N.E.3d 445, 454-64 (Mass. 2015). Permitting removal of this action – a state enforcement action

brought by the Attorney General – would represent a "particularly stark" disruption of the state-

federal balance struck by Congress. *See H&R Block*, 2006 WL 2669045, at *4 (concluding that

the risk of disruption was "particularly stark" where lawsuit was "brought by the state of

California in a California state court to enforce California laws for conduct which occurred in

California and which allegedly victimized California citizens"). *See also Baum v. Keystone*

*Mercy Health Plan*, 826 F. Supp.2d 718, 721 (E.D. Pa. 2011) (refusing to permit removal

because "If I were to find jurisdiction and allow this case to proceed in federal court, I would

federalize an entire category of state tort claims when Congress has not indicated any intent to do

so").[5]

### C.  State Law Claims That Incorporate Federal Standards or Could Be Based on Violations of Federal Law Do Not Arise Under Federal Law.

---

[5] Global suggests in passing that the "permitted acts" exemption of M.G.L. c. 93A, § 3, permits removal of the Commonwealth's claims. Notice of Removal at 13. But nothing in the text of the statute or any court decision supports this conclusion, and the Massachusetts Supreme Judicial Court has explained that the exemption generally "is an affirmative defense that must be asserted in the pleadings and proved at trial." *Fleming v. Nat'l Union Fire Ins. Co.*, 837 N.E.2d 1113, 1120-21 (Mass. 2005). Moreover, the exemption does not apply in this case because, as discussed above, the FTC did not give Global "affirmative permission" to engage in the unfair and deceptive conduct alleged in the Commonwealth's complaint. *See Aspinall*, 902 N.E.2d at 423-26 (concluding that the defendants "failed to meet their burden of showing that they were given affirmative permission" by the FTC to engage in the conduct alleged to violate Chapter 93A). Also inapposite is Global's citation to *McGonagle v. Home Depot USA, Inc.*, 915 N.E.2d 1083 (Mass. App. Ct. 2009), which considered whether Chapter 93A was inapplicable given the existence of another *state* statute. Notice of Removal at 13. Global does not explain how *McGonagle* could support the conclusion that this Court has jurisdiction over the Commonwealth's claims.

The Commonwealth alleges that Global's conduct violates Chapter 93A regardless of whether it also violates the TSR. However, to the extent Global is arguing that the Commonwealth's Chapter 93A claims arise under 28 U.S.C. § 1331 because they could be based on alleged violations of the TSR, the law is clear that federal courts do not have jurisdiction over state law claims that incorporate federal standards or could be predicated on violations of federal law. *See Nevada v. Bank of Am. Corp.*, 672 F.3d at 676 (remanding action to state court because "[s]tate courts frequently handle state-law consumer protection suits that refer to or are predicated on standards set forth in federal statutes"); *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996) (remanding action to state court because "[w]hen a claim can be supported by alternative and independent theories – one of which is a state law theory and one of which is a federal law theory – federal question jurisdiction does not attach because federal law is not a necessary element of the claim"); *Grable*, 545 U.S. at 319 ("A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts."); *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986) (the "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction"); *Moore v. Chesapeake & Ohio Ry. Co.*, 291 U.S. 205, 214-15 (1934) ("[I]t does not follow that a suit brought under the state statute which defines liability to employees who are injured while engaged in intrastate commerce, and brings within the purview of the statute a breach of the duty imposed by the federal statute, should be regarded as a suit arising under the laws of the United States and cognizable in the federal court").

The case of *Massachusetts v. V&M Management, Inc.*, 752 F.Supp. 519 (D. Mass. 1990), is instructive, and demonstrates that this Court would lack subject matter jurisdiction over the

Commonwealth's Chapter 93A claims even if the Commonwealth had cited the TSR in its complaint. In *V&M*, the Commonwealth filed a state court action in Massachusetts Superior Court to protect the tenants of a federally-subsidized housing project. *V&M*, 752 F.Supp. at 520. In Count 1 of the complaint, the Commonwealth alleged that the defendants had violated Chapter 93A by violating specific Massachusetts and federal housing statutes and regulations. *Id.* In Counts II through XIII of the complaint, the Commonwealth directly alleged violations of the same state and federal statutes and regulations referenced in Count 1. *Id.*

The defendants removed the action to federal court, arguing that multiple counts of the complaint, including Count 1, arose under federal law. *Id.* at 520-21. The court rejected the argument that Count 1 arose under federal law. Notwithstanding the fact that Count 1 alleged "five distinct violations of federal housing regulations," the court observed that those violations could "only be interpreted as *indicia* of the defendants' numerous unfair and deceptive housing practices." *Id.* at 521. The court stated that it would "not construe the Commonwealth's reference to federal regulations in Count 1 as creating 'substantial questions of federal law' sufficient to confer jurisdiction on this Court." *Id.*, quoting *Merrell Dow*, 478 U.S. at 814. Thus, the court concluded that the Commonwealth was "correct in characterizing its Chapter 93A claim as essentially a state law claim, despite the references to federal law," and that if the court were "faced with a [c]omplaint, alleging solely a violation of Chapter 93A as set forth in Count 1, it would be disposed to remand the case to the Superior Court for adjudication." *Id. See also Dean v. Compass Receivables Mgmt. Corp.*, 148 F.Supp.2d 116, 119 (D. Mass. 2001) (remanding action to state court because, "although the FDCPA may inform analysis of Chapter 93A claims, it is not an essential component of such claims"); *Hunneman Real Estate Corp. v. E. Middlesex Ass'n of Realtors, Inc.*, 860 F. Supp. 906, 910-11 (D. Mass. 1994) (rejecting argument that a

claim under the Massachusetts Antitrust Act arose under federal law because "[t]he Plaintiffs'
cause of action under state law does not 'necessarily turn on' a construction of federal law.
Rather, federal law provides 'guidance' for resolution of what remains a state cause of action";
"While the Massachusetts statute does call for analysis of federal law, this fact alone does not
provide a basis for jurisdiction."); *Bally v. National Collegiate Athletic Ass'n*, 707 F.Supp. 57, 60
(1988) (rejecting argument that claim under the Massachusetts Civil Rights Act arose under
federal law: "It would be more apt to say that the Massachusetts Civil Rights Act has adopted, to
some degree, a standard of federal law, but federal law provides neither the cause of action, the
remedy, nor the substantive right. Therefore, despite the 'context of federal constitutional
jurisprudence,' it is not possible to determine that a federal issue of law is essential to Bally's
claim.").

## VI.    Request for Costs and Expenses

The Commonwealth seeks an award of all "just costs and any actual expenses" incurred
as a result of Global's improper removal. 28 U.S.C. § 1447(c). The Supreme Court has explained
that courts should issue such awards "only where the removing party lacked an objectively
reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 140-41
(2005). "Although the First Circuit has not defined what constitutes an objectively reasonable
basis for removal," courts within the District of Massachusetts generally have made such awards
"only when the facts are 'so one-sided as to have made remand a foregone conclusion.'"
*Laughlin Kennel Co. v. Gatehouse Media Inc.,* 202 F. Supp.3d 178, 181 (D. Mass. 2016),
quoting *Youtsey v. Avibank Mfg., Inc.*, 734 F. Supp.2d 230, 239 (D. Mass. 2010).

Here, Global removed this action on the basis of spurious and specious arguments that
contradict settled law, and it did so when the Commonwealth's motion for a preliminary

14

injunction was pending. No case law supports Global's position. In removing the Commonwealth's claims, Global has unreasonably delayed the Commonwealth's prosecution of this enforcement action and wasted this Court's time and resources. *See Martin,* 546 U.S. at 140 ("The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources."). The Commonwealth submits that an award of costs and expenses is particularly appropriate in these circumstances. *Compare Schwesinger v. Hurley*, No. 13-CV-11436-DPW, 2014 WL 1311756, at *5 (D. Mass. Mar. 31, 2014) (awarding reasonable attorneys' fees and costs because the basis for removal was "spurious" and the circumstances strongly suggested that the "notice of removal was nothing other than a transparent attempt to stave off a day of reckoning"); *Harvard Real Estate–Allston, Inc. v. KMART Corp.*, 407 F. Supp.2d 317, 322 (D. Mass. 2005) ("The justification for the award of attorney's fees is especially strong in a case such as this where, on a spurious basis, the defendant delayed the summary process procedure by invoking the removal procedures of the federal court."), *with Adams v. Beacon Hill Staffing Group*, *LLC*, No. 15-cv-11827-ADB, 2015 WL 6182468, at *4 (D. Mass. Oct. 21, 2015), quoting *Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313, 315 (D. Mass. 2013) (refusing to award fees and costs because the asserted basis for removal had "deeply divided district courts across the country"); *GeoVantage, Inc. v. SimWright, Inc.*, No. 13–12178–RWZ, 2014 WL 183667, at *2 (D. Mass. Jan. 16, 2014) (refusing to award costs and fees because some "case law" had supported removal, although removal was ultimately determined to be improper); *Ophnet, Inc. v. Lamensdorf*, No. 05–10970–DPW, 2005 WL 3560690, at *3 (D. Mass. Dec. 27, 2005) (declining to award costs and expenses because case law supported the defendants' position and the defendants had provided facts to support their allegations). *See also Texas v. Melton*, No. A-16-

15

CA-863-SS, 2016 WL 4718434, at *3 (W.D. Tex. Sept. 9, 2016) (awarding costs and attorney's fees because Texas' state law claims did "not involve or depend upon the resolution of a federal question" and "there was no objectively reasonable basis" for removal of the case).

### VII.    Conclusion

For the reasons set forth above, the Commonwealth respectfully requests that the Court allow its motion for remand, issue an order remanding the case to Suffolk Superior Court, and award the Commonwealth all just costs and actual expenses incurred as a result of Global's improper removal.

Respectfully Submitted,

COMMONWEALTH OF MASSACHUSETTS
MAURA HEALEY
ATTORNEY GENERAL


*/s/ Benjamin Golden*
Benjamin Golden (BBO #686119)
Assistant Attorney General
Max Weinstein (BBO #600982)
Chief, Consumer Protection Division
One Ashburton Place
Boston, MA 02108
Telephone (Golden): (617) 963-2661
Telephone (Weinstein): (617) 963-2499
Email: Benjamin.Golden@state.ma.us
Email: Max.Weinstein@state.ma.us

Date: June 20, 2018

**CERTIFICATE OF SERVICE**

      I certify that this document filed through the CM/ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 20, 2018.


                                      */s/ Benjamin Golden*
                                      Benjamin Golden

Date: June 20, 2018