UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No.: 1:18-cv-11120-ADB

_____

COMMONWEALTH OF MASSACHUSETTS

                                      Plaintiff,

v.

DMB FINANCIAL, LLC and GLOBAL CLIENT
SOLUTIONS, LLC,

                                      Defendants.

_____

### DEFENDANT GLOBAL CLIENT SOLUTIONS, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Local Rule 7.1(b)(2), Defendant Global Client Solutions, LLC, ('Global") hereby files this Response in Opposition to Plaintiff Commonwealth of Massachusetts's ("Plaintiff" or "State") Motion to Remand (Doc. 18) and incorporated Memorandum of Law, and states as follows:

### FACTS

Global submitted a comprehensive Notice of Removal (Doc. 1), going far beyond the elements necessary for such a procedure, in order that the factual and legal basis for the removal could be fully understood. Accordingly, Global will not repeat the facts outlined in the Notice of Removal.

Plaintiff's Memorandum in Support of its Motion for Remand ("Memo") (Doc. 18-1 (also Doc. 19)) has revealed additional bases for federal jurisdiction which will be addressed in this Response.

**ARGUMENT**

1.  **The Plaintiff's Concessions Reveal That Allegations Of Violations Of The TSR Appear On The Face Of The Complaint, And Thus The Complaint Should Have Been Brought In Federal Court Pursuant To 15 U.S.C. § 6103(a).**

The Plaintiff does not contest, and even concedes, that Chapter 93A lacks any content about what may constitute an unfair or deceptive practice, other than its incorporation by reference of FTC orders and rules. Plaintiff's Memo, at p.9, fn.3. The Plaintiff further does not contest, and effectively concedes, that the substantive allegations of its Complaint against Global are cribbed without attribution directly from the FTC's Telemarketing Sales Rule ("TSR"). The Plaintiff does not purport to have discovered or to be announcing nascent or emerging state law regulation of the debt management or debt settlement industry, instead overtly acknowledging that the field is covered by the TSR. Accordingly, for the purposes of this case, Chapter 93A is nothing more than a hollow conduit through which the Plaintiff seeks to enforce federal law in the form of the TSR. The Telemarketing and Consumer Fraud and Abuse Prevention Act, the TSR's enabling legislation, dictates that such an action can be brought in federal district court. 15 U.S.C. § 6103(a).

Section 6103(a) addresses specifically actions by an attorney general of any state who believes that state residents are harmed by "any person [who] has engaged or is engaging in a pattern or practice of telemarketing which violates any rule of the Commission under s. 6102 of this title." Section 6103(a) provides that such an attorney general should bring suit "in an appropriate district court of the United States . . . to enforce compliance with such rule of the Commission."

This Complaint by the Plaintiff is such a suit. The allegations of wrong-doing quote from the TSR, not Chapter 93A, nor any other state law source, which the State acknowledges does

not exist. Accordingly, pursuant to § 6103(a)'s specific grant of federal subject matter jurisdiction, this is a case "of which the district courts of the United States have original jurisdiction [and thus it] may be removed by the defendant or the defendants to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

The Plaintiff claims that its assertion of liability under Chapter 93A does not depend on or raise an issue of federal law. But it does not explain what is wrong with the conduct in which Global supposedly engaged and points to no source (other than the TSR) of the very specific standards of conduct it claims Global has violated. Plaintiff's Memo, at p.9. The Plaintiff's own pleading belies the position it now takes. The Plaintiff cannot have it both ways. It cannot claim to be enforcing broad state law prohibitions against unfair and deceptive acts or practices generally, and at the same time quote from the TSR particularly to define the allegedly prohibited conduct. *See,* Plaintiff's Memo, at p.9, fn.3.

### 2. The Complaint Contains Embedded Federal Questions Under *Grable's* Four Part Analysis.

Because the Plaintiff's case could have been brought in this Court initially, pursuant to § 6103(a), as demonstrated above, it is not even necessary to engage in a *Grable* analysis. *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308 (2005). However, at the very least, Plaintiff's conflation of state and federal law renders this entire case removable under 28 U.S.C. § 1441(c)(1) and *Grable*.

#### (i) The first Grable test.

The substantive allegations of Count III of the Complaint as to how Global allegedly violated Chapter 93A unquestionably demonstrate that the first criterion of *Grable,* that a federal question is raised, has been satisfied. The Plaintiff is quoting federal law. In paragraph 128 of the

Complaint (Doc. 1-2, p. 25 of 36), the Plaintiff alleges that Global violated Chapter 93A by "distributing settlement fees to DMB in advance of consumers having made at least one payment pursuant to settlements negotiated by DMB" and "distributing settlement fees to DMB based on the amounts of consumers' debts at the time of settlement rather than enrollment." These actions are not inherently wrongful (for either Global or DMB), nor are they defined as wrongs anywhere in any statute, regulation or common law of Massachusetts. Rather, these statements of allegedly wrongful conduct are drawn, virtually verbatim, from 16 C.F.R. § 310.4(a)(5)(i) of the TSR, which states there that it is "a violation of this Rule" for a DMSP (alleged to be DMB in this case) to receive payment unless "[t]he customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor or debt collector." The section goes on to require that the amount of the fee paid for negotiating any single debt be proportional to the amount that individual debt bears to the customer's entire debt amount, and further requires that "[t]he individual debt amount and the entire debt amount are those owed at the time the debt was enrolled in the service." As is apparent, each of the alleged "wrongs" is derived directly from the TSR, utilizing concepts and protections and even language that are unique to the TSR and absent from Massachusetts law.

The Plaintiff goes on to fold in its allegations against DMB contained in the other two counts, stating that "Global provided substantial assistance or support to DMB when Global knew or consciously avoided knowing of each of the unfair and deceptive acts and practices described in Counts 1 and 2." (Compl. at ¶ 129, Doc. 1-2, p. 25 of 36) This legal concept likewise has no support anywhere in Massachusetts law, and instead is drawn solely from the TSR, 16 C.F.R. § 310.3(b):

> Assisting and Facilitating. It is a deceptive telemarketing act or practice and in violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§ 310.3(a)(c) or (d), or § 310.4 of this Rule.

To determine culpability under this allegation, the Court will not be interpreting Massachusetts law but instead the TSR. Indeed, applying this standard to Global as a stand-alone Chapter 93A violation would be contrary to Massachusetts law, which requires "knowledge that such assistance is contributing to a common tortious plan" in order to impose aiding or abettor liability. *Kurker v. Hill,* 689 N.E. 2d 833, 837 (Mass. App. Ct. 1998). Here, the Plaintiff is actively abandoning state law and applying only federal law to make Global responsible for the alleged actions of DMB. Plaintiff is fleeing from the higher state law standard, which requires actual knowledge of a tortious scheme, and actual knowledge that the actor is assisting with the tortious scheme. Instead, Plaintiff is applying a much lower federal standard, derived directly by quotes and paraphrase from the TSR, which requires only consciously avoiding knowledge of the tortious scheme.

The Plaintiff relies on *Nevada v. Bank of America Corporation,* 672 F.3d 661 (9th Cir. 2012), to support its position that it can enforce federal law without raising a federal issue. The defendant in *Nevada v. Bank of America* removed the case based on the Class Action Fairness Act ("CAFA"). Rejecting the CAFA theory, the court went on *sua sponte* to address whether it and the district court had federal question jurisdiction. The court concluded that "[t]he gravamen of the Complaint is that Bank of America violated Nevada's DTPA through numerous misrepresentations, some about the HAMP program and some of which also violate the FDCPA." *Id.* at 675. The court concluded that these glancing references to these federal statutes are not "pivotal" to Nevada. *Id.* Thus, the critical allegation was that the defendant made

5

misrepresentations *about* federal law (and thus violated state law), *not* that the defendant violated federal law. *See, Lindbloom v. Specialized Loan Servicing, LLC,* No. 3:12-CV-00071 JWS, 2012 WL 12872725 (D. Alaska June 12, 2012) (declining to apply *Nevada v. Bank of America* because it merely addressed "alleged misrepresentations *about* HAMP," *id.* at *1, while Lindbloom alleged violations of federal law). Because the Plaintiff here has alleged actual violations of the TSR (albeit without quotation marks or attribution), not mere misrepresentations about the TSR, reliance on *Nevada v. Bank of America* is misplaced.

The Plaintiff's reliance on *Rains v. Criterion Systems, Inc.,* 80 F.3d 339 (9th Cir. 1996), is also misplaced. There, a former employee sued an employer in state court, who removed the case to federal court without objection from the plaintiff. After summary judgment was entered against the employee, he appealed. The Ninth Circuit *sua sponte* raised the issue of jurisdiction. The employee had alleged a state cause of action for "wrongful termination in violation of public policy," 80 F.3d at 343, a cause of action available under California law. One element of that state law claim is the existence of a public policy "delineated in constitutional or statutory provisions." *Id.* (internal quotation and citations omitted). The employee referred in part to Title VII to show a general public policy against religious discrimination. The court concluded that, while federal law may provide the policy, it does not provide the cause of action or convert the cause of action into a federal question.

The same can be said of the three Supreme Court cases included in the Plaintiff's string cite. In the language Plaintiff quotes from *Grable,* 545 U.S. at 319, the Court was discussing use of a federal statute solely to provide the standard of care for a garden variety state law negligence claim. Similarly, in *Merrell Dow Pharms., Inc. v. Thompson,* the Court noted that (unlike § 6103(a) here) Congress created no federal right of action under the Food and Drug Act, and

merely using that Act as a standard of care in a state law negligence case did not make the case one "arising under" federal law. Finally, in *Moore v. Chesapeake & Ohio Ry. Co.,* 291 U.S. 205 (1934), the Federal Safety Appliance Acts merely provided part of the standard of care for the state law claim.

Here, the TSR is not merely tangential, nor does it provide a mere element to the Plaintiff's allegedly state law based claim. Rather, the TSR supplies the full scope of the Plaintiff's claim. Plaintiff is not asserting a mere state law negligence or misbranding claim, where the federal law supplies a negligence per se standard for the state law claim. *E.g.*, *Merrell Dow*, *Moore*. Plaintiff is not asserting a judge-made state law claim that relies on federal law only to enunciate a public policy. *E.g.*, *Rains*. Plaintiff is not alleging that Global violated state law fraud standards in making representations about the requirements of federal law. *E.g.*, *Nevada*. Instead, the Plaintiff is asserting violation of a federal law, albeit cloaked by omission of citation. Like the federal law regarding adequacy of notice in Grable, the TSR – and only the TSR – provides the rule for decision in this case. This Court should apply "the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.

The Plaintiff's citation to *Commonwealth of Massachusetts v. V&M Management, Inc.,* 752 F.Supp. 519 (D. Mass. 1990), is self-defeating. Indeed, *V&M* provides a means of analysis of the Complaint which actually demonstrates the flaws in the Plaintiff's analysis.

Plaintiff notes the Court's observation that in the first count the Commonwealth enumerated five federal statutory violations and sixteen violations of Massachusetts' housing

statutes or regulations, all of which were collectively alleged to constitute unfair and deceptive acts under Chapter 93A (*Id.* at 520) and accordingly found that the federal statutory violations provided only a small part of the state law claim under Chapter 93A, and thus did not create federal question jurisdiction.

Apparently the Plaintiff stopped reading there. However, the court in *V&M* went on, finding as to five other counts that solely federal violations were alleged. *Id.* at 521. Each of these five counts in *V&M* are analogous to the Complaint in this case. Those counts rested solely on allegations of violation of separate provisions of federal law. For those counts, as in this case, resort to Chapter 93A was unnecessary, as Chapter 93A adds nothing to the legal analysis of those counts. Here, Chapter 93A adds nothing to the allegations of the Complaint which as note effectively quote the TSR without attribution. The single count against Global in this Complaint equates to the five counts in *V&M* which rendered the entire case removable.

While the Plaintiff's argument that FTC regulations merely set the floor, not the ceiling, for Chapter 93A is interesting in a vacuum, (Plaintiff's Memo, at p.5), as applied here it misses the point. The Plaintiff has not exercised any power under Chapter 93A to create stronger regulations for Dedicated Account Providers ("DAP"). Indeed, the Plaintiff has not exercised any power at all under Chapter 93A to regulate any actor in the debt management or debt settlement industries. In this Complaint in particular, the Plaintiff has only used the TSR and has not added one iota to it. In the absence of the imbedded federal questions in this case, the Plaintiff is floundering in a standardless sea, with no rule of law or standard to apply (and just as importantly, no rule of law or standard for Global to follow). Federal law in the form of the TSR provides the only standards.

The Plaintiff cannot explain why the facially benign conduct of which it accuses Global –

payment processing – is wrongful without invoking the TSR. Plaintiff's assertion that "Global's conduct violates Chapter 93A regardless of whether it also violates the TSR", Plaintiff's Memo, at p.12, is baseless. Because incorporating the TSR provides the only legal standard by which a Chapter 93A claim can be determined, under Plaintiff's theory, a Chapter 93A claim can be proven only by proving a violation of the TSR. Nothing else is required that would convert the claim into a state law claim. Therefore, the TSR is a necessarily imbedded question which must be decided in this case.

  **(ii)**   **The second *Grable* test.**

The second factor of *Grable* requiring that the federal issue is actually disputed is also met in this case. Because the Plaintiff has parroted the TSR without citing to it, it is apparent that the State does not intend to deem itself bound by federal interpretation of the TSR. The surreptitious incorporation of the TSR telegraphs that Plaintiff will pursue its own idiosyncratic view of what the TSR's language means. Presumably, this will include ignoring or undermining the role that Global plays as a DAP in facilitating the FTC's regulation of the industry and protection of consumers. If the Plaintiff is successful in undermining the DAP role, the FTC regime for protection of consumers will substantially collapse.

  **(iii)**   **The third *Grable* test.**

The third factor of *Grable* -- that the federal issue is substantial – is established simply by reviewing the comprehensiveness of the TSR, which sets forth a uniform, nationwide regulatory scheme whose basic structure could be negated in a single state by a state court action. In particular, the role of the DAP in providing a buffer similar to that of an escrow agent between the DMSP and the customer is essential to the effectiveness of the TSR. Redefining the industry,

and the roles of the players in it, in a state court action making law only in that state, would undermine the FTC's carefully prescribed nationwide regulatory framework.

**(iv) The fourth *Grable* test.**

*Grable's* fourth factor is satisfied because the federal issue is capable of resolution in federal court without disrupting any balance with state courts. The Plaintiff's citation to *Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140 (1988), misses the mark. There, the Court was addressing the Anti-Injunction Act, not the removal statute or federal question jurisdiction. The portion of the decision quoted by the Plaintiff, which simply signifies that state court actions may not be enjoined merely because they include federal claims, plainly has no application here. Since the State concedes that there is no substantial state law content to Chapter 93A, there can be no interference with an exclusive state prerogative resulting from this removal. The other cases cited on this point merely hold that the state court has jurisdiction, a proposition Global has never contested. Rather, Global seeks removal precisely because this Court also has jurisdiction.

In sum, there is no state substantive law at issue here. Instead, it is all borrowed from the TSR. All the *Grable* tests are met, and this Court will not be interfering with any state court prerogatives by construing the TSR and applying it to the facts of the case.

**3. Global's Removal Is Objectively Reasonable And, Even If Remand Were Appropriate, The Plaintiff Should Not Be Awarded Its Attorneys' Fees And Expenses.**

"Absent unusual circumstances, courts may award attorneys' fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005). Any lower standard would defeat the congressional purpose in conferring the right to remove, as it would discourage the exercise of that right in all but the most obvious cases. *Id.* at 140. In general, the court should look to

whether the purpose of the failed removal was simply to delay litigation and impose costs on the plaintiff. *Id.* Merely concluding that a case presents a "close question," *id.* at 141 (internal citation and quotations omitted), does not meet the high standard of lacking no objectively reasonable basis.

Global's removal is objectively reasonable if for no other reason than that the Plaintiff chose to quote directly from the TSR, cites to no standard of conduct other than as provided by the TSR and does not purport to be enforcing any substantive law beyond the TSR. The Plaintiff simply seeks to pour the TSR into the empty vessel of Chapter 93A and thereby turn it into a state law claim. At the very least, this request for removal raises a substantial issue.

The District of Massachusetts cases cited by the Plaintiff plainly support Global's position here. For example, in *Laughlin Kennel Co. v. Gatehouse Media, Inc.,* 202 F.Supp. 3d 178, 181 (D. Mass. 2016), the case was removed based on diversity of citizenship. The complaint contained no basis for claiming that the damages exceeded $75,000.00, nor did the defendant present any evidence that the $75,000.00 threshold was met. Nevertheless, the court did not feel the facts were so one-sided that the case lacked a reasonable basis for removal. Similarly, in *Youtsey v. Avibank Mfg., Inc.,* 734 F.Supp. 2d 230 (D. Mass. 2010), while finding that the removing defendant had "skirt[ed] the edge," *id.* at 239, the law was sufficiently unsettled to preclude an award of fees. Here, proper application of *Grable,* as well as the presentation of a federal question under 15 U.S.C. § 6103(a), is at least sufficiently unsettled so as to preclude an award of fees and expenses.

Global's actions in this case belie any motivation to cause undue delay or expense. Global's removal was prompt, and its notice of removal was encyclopedic. This enabled the Plaintiff to craft a motion to remand without having to incur undue expense and speculation

regarding the basis for removal or Global's legal theories. Instead, Global has focused the issue from the outset.

## CONCLUSION

For the foregoing reasons, Global respectfully submits that the Motion to Remand should be denied.

## REQUEST FOR ORAL ARGUMENT

Global requests oral argument on the State's Motion to Remand. The Motion and this opposition raise legal issues of sufficient complexity in an evolving area of the law so that oral argument, with the opportunity for the Court to pose to counsel questions that may arise from the parties' briefing of the Motion, will substantially benefit the Court while it considers the State's Motion to Remand and Global's opposition.

Respectfully submitted this 23rd day of July 2018.

        GREENSPOON MARDER LLP

        BY: */s/Richard W. Epstein*
        Richard W. Epstein (Admitted *Pro Hac Vice*)
        Florida Bar No. 229091
        GREENSPOON MARDER LLP
        200 East Broward Boulevard, Suite 1800
        Fort Lauderdale, Florida 33301
        Telephone: 954.491.1120
        Facsimile: 954.343.6958
        richard.epstein@gmlaw.com

        Meredith H. Leonard (BBO#569357)
        590 Madison Avenue, Suite 1800
        New York, New York 10022
        Telephone: 212.524.5090
        Facsimile: 212.524.5050
        meredith.leonard@gmlaw.com

        -And-

Michael S. Gardner (BBO#185040
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
Telephone:  617.542.6000
Facsimile: 617.542.2241
msgardener@mintz.com

*Counsel for Global Client Solutions, LLC*

## CERTIFICATE OF SERVICE

I, Richard W. Epstein, hereby certify that a true copy of the above document, filed through the CM/ECF system this 23rd day of July, 2018, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on this date.

BY: */s/Richard W. Epstein*
Richard W. Epstein (Admitted *Pro Hac Vice*)