UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, <br><br> Plaintiff, <br><br> v. <br><br> DMB FINANCIAL, LLC and GLOBAL CLIENT SOLUTIONS, LLC, <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> *    Civil Action No. 18-cv-11120-ADB <br> * <br> * <br> * <br> * <br> * |

## **MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Before the Court is the Commonwealth's motion to remand and request for costs and expenses. [ECF No. 18]. For the reasons explained below, the motion to remand is <u>GRANTED</u> and the request for costs and expenses is <u>DENIED</u>.

### I. BACKGROUND

The Commonwealth filed this action in the Superior Court of Suffolk County, Massachusetts on May 14, 2018. [ECF No. 5 at 2]. The Complaint asserts claims under the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A ("Chapter 93A"), against Defendants DMB Financial, LLC ("DMB") and Global Client Solutions, LLC ("Global"), and a claim for the unauthorized practice of law against DMB. DMB is in the business of charging consumers fees for negotiating down their debts. [ECF No. 1-2 ¶ 1]. Global is a "dedicated account provider" that maintains and provides services in connection with bank accounts into which financially distressed consumers deposit money pursuant to debt relief plans, including those offered by DMB. [ECF No. 1-2 ¶¶ 15, 58–60]. The accounts serve as a source of funds that DMB can rely on as it negotiates down consumers' debts and for the settlement fees it earns.

The Commonwealth claims that DMB made unfair and deceptive representations to financially distressed consumers concerning its debt restructuring program, gave its customers legal advice that it was not licensed to provide, and then enriched itself by pilfering the accounts that Global established and maintained for consumers participating in DMB's debt restructuring program. [ECF No. 1-2 ¶¶ 119–26]. The Commonwealth further alleges that Global violated Chapter 93A by distributing settlement fees to DMB from the consumer accounts that it maintained, without proper authorization and before a consumer had made a payment pursuant to a negotiated settlement that would have entitled DMB to the fees, and also by distributing a fee that was calculated based on an inflated amount of debt. [ECF No. 1-2 ¶¶ 127–30].

The Commonwealth moved for a preliminary injunction on May 16, 2018, see [ECF No. 5 at 2], and on May 29, 2018, Global removed the action to this Court, claiming that this case arises "under the Constitution, laws, or treaties of the United States." [ECF No. 1 ¶ 14 (quoting 28 U.S.C. § 1331)]. The Commonwealth filed a motion to remand on June 20, 2018. [ECF No. 18]. Global filed its opposition on July 23, 2018. [ECF No. 30]. The Commonwealth filed a reply on August 1, 2018, [ECF No. 33], and Global filed a notice of supplementary authority on October 2, 2018. [ECF No. 40].

## II. ARISING UNDER JURISDICTION

A defendant may remove a civil action from state court to federal court, if the plaintiff "could have brought it in federal district court originally." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005) (citing 28 U.S.C. § 1441(a)). To remove an action to federal court, a defendant must file a notice of removal within thirty days of receipt of the complaint and service of summons. 28 U.S.C. § 1446(b); Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 354 (1999). Defendants bear the burden of showing the federal

court's jurisdiction, Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999) (citing BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4, 132 F.3d 824, 831 (1st Cir.1997)), and that showing "may not be sustained on a theory that the plaintiff has not advanced." Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 810 n.6 (1986) (citing Healy v. Sea Gull Specialty Co., 237 U.S. 479, 480 (1915) ("[T]he plaintiff is absolute master of what jurisdiction he will appeal to."); The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913) ("[T]he party who brings a suit is master to decide what law he will rely upon."); United States v. Mottaz, 476 U.S. 834, 850 (1986)).

Congress has granted the district courts federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[T]he vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action.'" Merrell Dow, 478 U.S. at 808. Global claims that two circumstances in which federal district courts have "arising under" jurisdiction even though no federal cause of action has been used by the plaintiff apply here: (1) federal preemption, see [ECF No. 1 ¶¶ 28–33], and (2) the "state-law claims . . . implicate significant federal issues" under the analysis set forth in Grable, 545 U.S. at 312 (citing Hopkins v. Walker, 244 U.S. 486, 490–491 (1917)); see [ECF No. 1 ¶¶ 14–27]; see also Narragansett Indian Tribe v. R.I. Dep't of Transp., 903 F.3d 26, 31 (1st Cir. 2018).[1]

---

[1] Global's opposition to the motion to remand argues that the complaint should have been brought in federal court pursuant to 15 U.S.C. § 6103(a), see [ECF No. 30], under which state attorneys general "*may bring*" civil actions in the federal district courts based on a "pattern or practice of telemarketing which violates any rule of the Commission . . . ." 15 U.S.C. § 6103 (emphasis added). If that argument is distinct from Global's complete preemption and significant federal issue arguments, it fails because the Court is bound by the well-pleaded complaint rule, which limits its consideration to claims raised in the complaint. Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987) ("[A] cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law. The 'well-pleaded complaint

3

## III. DISCUSSION

The Court will briefly review the Telemarketing Sales Rule ("TSR") and the provisions of the 2010 Debt Relief Amendments that Global claims form the basis of the Commonwealth's complaint. The Court will then consider Global's arguments that the Court has jurisdiction.

### a. The TSR and Global

In 2010, the Federal Trade Commission amended the TSR to curb deceptive practices associated with debt relief. The amendments prohibit debt relief providers from collecting fees until services have been provided, require specific disclosures, prohibit material misrepresentations, and extend the TSR's coverage to companies that solicit customers through general media advertisements as opposed to just cold-calling. See Telemarketing Sales Rule, 75 Fed. Reg. 48458 (August 10, 2010) (codified at 16 C.F.R. pt. 310). The TSR "permits debt relief providers," such as DMB, "to require consumers to place funds designated for the company's fees and for payment to the consumer's creditors or debt collectors in a dedicated bank account." Id. at 48490. Under a typical arrangement, a financially distressed consumer makes payments into an account at an insured financial institution that can later be drawn upon to cover debts that the relief provider successfully renegotiates, plus fees earned for the negotiating. See 16 C.F.R. § 310.4(a)(5). The funds in such an account belong to the consumer, and the consumer "may withdraw from the relief service at any time without penalty[] and must receive all of the funds in the account" within seven business days of withdrawing from the debt service, less amounts earned by the relief service provider in compliance with the regulations. 16 C.F.R.

---

rule' is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts." (citations omitted)). The argument that the Commonwealth should have brought its action in federal court pursuant to 15 U.S.C. § 6103 is considered below in connection with the Court's complete preemption and Grable factors analysis. See infra Parts III.b, III.c.

§ 310.4(a)(5)(ii)(E). The TSR restricts when settlement fees may be assessed and how they are calculated, including by prohibiting request or receipt of payment from a consumer's account until the debt service provider has altered the terms of at least one of the consumer's debts and the consumer has made a payment pursuant to the altered agreement. 16 C.F.R. § 310.4(a)(5)(i)(B). Additionally, the fee must be either proportional to the total fee or a percentage of the amount saved, and in either case, it must be calculated based on the amount owed at the time the debt was enrolled in the service. 16 C.F.R. § 310.4(a)(5)(i)(C)(1)–(2).

Global claims to operate in a "specific niche" for dedicated account providers that was created by the 2010 amendments to the TSR. [ECF No. 1 ¶ 5]. This niche allows entities that are neither insured depositories nor debt relief providers to provide services in connection with a consumer's account, although insured depositories, debt relief providers, and dedicated account providers are all subject to the same regulatory requirements described above. Telemarketing Sales Rule, 75 Fed. Reg. 48490 n.445.

### b. Complete Preemption

Global argues in its removal notice that "federal preemption" is a recognized exception to the well-pleaded complaint rule. [ECF No. 1 ¶ 31]. Global cites to Metro. Life Ins. Co. v. Taylor, which explains:

> Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court. One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.

481 U.S. at 63; see also Ten Taxpayer Citizens Grp. v. Cape Wind Assocs., LLC, 373 F.3d 183, 191 (1st Cir. 2004) ("[A] federal defense does not confer 'arising under' jurisdiction, regardless of whether that defense is anticipated in the plaintiff's complaint."). The First Circuit has further

explained that "[t]he doctrine of complete preemption is conceptually distinct from the doctrine of ordinary (or defensive) preemption: the latter defends against a plaintiff's local-law claims without any jurisdictional ramifications, but the former clears a path—albeit one that is rarely traversed successfully—into federal court." Lopez-Munoz v. Triple-S Salud, Inc., 754 F.3d 1, 5 (1st Cir. 2014) (citing Fayard v. Ne. Vehicle Servs., LLC, 533 F.3d 42, 45, 48 (1st Cir. 2008)). The Court assumes that Global is asserting that the Commonwealth's claims are completely preempted.

The complete preemption doctrine provides that when a "federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003). "The linchpin of the complete preemption analysis is whether Congress intended that federal law provide the exclusive cause of action for the claims asserted by the plaintiff." Lopez-Munoz, 754 F.3d at 5 (citing Beneficial Nat'l Bank, 539 U.S. at 5). Complete preemption is generally found only where there is exclusive federal regulation of the subject matter underlying the asserted claim and Congress has established a cause of action for those wrongs. Id. Further, the Supreme Court has explained that "[i]f Congress intends a preemption instruction completely to displace ordinarily applicable state law, and to confer federal jurisdiction thereby, it may be expected to make that atypical intention clear." Lopez-Munoz 754 F.3d at 5–6 (quoting Empire HealthChoice Assur., Inc. v. McVeigh, 547 U.S. 677, 698 (2006)).

Here, there is no doubt that Congress intended to allow states to enforce their own laws in their own courts. Congress has provided that 15 U.S.C. § 6103—which Global claims the Commonwealth should have used—does not "prohibit an authorized State official from

6

proceeding in State court on the basis of an alleged violation of any civil or criminal statute of such State." 15 U.S.C. § 6103(f)(1). As such, Congress has not provided "the exclusive cause of action for the claims asserted," Lopez-Munoz, 754 F.3d at 5, and the doctrine of complete preemption does not vest this Court with jurisdiction over the claims asserted.

### c. Significant Federal Interest

Under the significant federal interest test established by Grable, "in rare instances," a state law cause of action can form the basis for federal "arising under" jurisdiction if a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) may be entertained in a federal forum "'without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" Narragansett, 903 F.3d at 31 (quoting Grable, 545 U.S. at 314). The test is not defined by bright line rules and may require careful judgment about the nature of the federal interest at stake. Grable, 545 U.S. at 317 (citing Merrell Dow, 478 U.S. at 810, 814 n.12); See Gunn v. Minton, 568 U.S. 251, 258 (2013) ("In outlining the contours of this slim category, we do not paint on a blank canvas. Unfortunately, the canvas looks like one that Jackson Pollock got to first."). "[T]he mere fact that a claim or defense requires an explanation of a federal statutory scheme as background does not mean that a complaint 'necessarily raise[s] a stated federal issue.'" Narragansett, 903 F.3d at 32 (quoting Grable, 545 U.S. at 314).

Federal issues may be "necessarily raised" and "actually disputed" in this case. Although the Complaint does not cite to the TSR, the Commonwealth acknowledges that Chapter 93A "incorporates the extensive body of Federal administrative and decisional law under the FTC Act," and the Complaint evidences an awareness of the TSR. See [ECF No. 33 at 1–2 (citing Purity Supreme, Inc. v. Att'y Gen., 407 N.E.2d 297, 301 (Mass. 1980)]. Additionally, Global's removal notice suggests that it may assert a preemption defense based on the TSR. The Court,

7

however, does not need to determine whether the federal issues in this case are "necessarily raised," because they are not, in Grable's terms, "substantial," and entertaining this case and others like it in a federal forum would likely disturb the congressionally approved balance of federal and state judicial responsibilities.

Global bears the burden of establishing federal jurisdiction and is therefore responsible for showing that the federal issue is substantial, meaning "not only important to the parties, but important to the federal system." Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc., 726 F.3d 8, 14 (1st Cir. 2013). Issues may be important to the federal system in at least two circumstances. First, where "the outcome of the claim could turn on a new interpretation of a federal statute or regulation which will govern a large number of cases" because it "presents 'a nearly' pure issue of law . . . that could be settled once and for all rather than an issue that is 'fact-bound and situation-specific,'" the federal issue is more likely to be substantial. Id. (citing Empire Healthchoice Assurance, 547 U.S. at 700). "Second, a federal issue may also be substantial where the resolution of the issue has broader significance for the Federal Government," particularly where a claim "directly challenges the propriety of an action taken by a federal department, agency, or service." Id. (punctuation omitted) (citing Empire Healthchoice Assurance, 547 U.S. at 700; Smith v. Kan. City Title & Trust Co., 255 U.S. 180 (1921)).

Global argues that the impact on the federal system "is established simply by reviewing the comprehensiveness of the TSR, which sets forth a uniform, nationwide regulatory scheme whose basic structure could be negated in a single state by a state court action." [ECF No. 30 at 9]. Global adds that "in particular, the role of the [dedicated account provider] . . . is essential to the effectiveness of the TSR." [ECF No. 30 at 9]. As an initial matter, the Massachusetts state

8

courts are more than capable of understanding the TSR to the extent the it informs Chapter 93A and are not likely to "undermine the FTC's carefully prescribed nationwide regulatory framework." [ECF No. 30 at 10]. Further, Global operates in a "specific niche" that the FTC created through a footnote that was specifically responding to comments submitted by Global and one other entity. Global has not argued that a large number of cases will be affected by any question of law that this case will resolve, nor is any federal action directly challenged here. Cf. Gunn, 568 U.S. at 263 (finding that patent law questions within a legal malpractice action were not substantial because the effects would be "fact-bound and situation-specific"); Doe v. Boston Univ., No. 17-CV-10520-LTS, 2017 WL 2255752, at *2 (D. Mass. May 23, 2017) (rejecting arguments for substantiality based on the complexity of Title IX). Additionally, this case appears to involve fact-bound and situation-specific issues, including whether Global or DMB committed unfair or deceptive acts within the meaning of Chapter 93A, such as whether Global knew or consciously avoided knowing how DMB calculated its settlement fees. See Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998) ("Chapter 93A liability is decided case-by-case, and Massachusetts courts have consistently emphasized the 'fact-specific nature of the inquiry.'" (quoting Linkage Corp. v. Trustees of Boston Univ., 679 N.E.2d 191, 209 (Mass. 1997))).

Finding federal jurisdiction based on a fact-specific claim brought under Chapter 93A by the Massachusetts Attorney General would also risk disturbing the congressionally approved balance of federal and state judicial responsibilities. Chapter 93A "is a statute of broad impact which creates . . . substantive rights and provides . . . procedural devices for the enforcement of those rights." Slaney v. Westwood Auto, Inc., 322 N.E.2d 768, 772 (Mass. 1975). In interpreting Chapter 93A, courts are guided by rules the Massachusetts Attorney General may

9

make, which may not be inconsistent with the rules, regulations, and decisions of the FTC and the federal courts' interpretations of the Federal Trade Commission Act. Mass. Gen. Laws ch. 93A, § 2.

Here, Global argues that the Commonwealth should have filed this action pursuant to 15 U.S.C. § 6103(a). Section 6103 provides that "[n]othing contained in this section shall prohibit an authorized State official from proceeding in State court on the basis of an alleged violation of any civil or criminal statute of such State," and it was enacted in July of 2010 by which time the Massachusetts Attorney General had been enforcing Chapter 93A to protect consumer rights for more than 40 years. 15 U.S.C. § 6103(f)(1). As such, depriving the Massachusetts Attorney General of the right to pursue this action before the Commonwealth's courts would threaten the balance of federal and state judicial responsibilities tacitly approved by Congress when it enacted section 6103 and specifically allowed state officials to bring state law actions in state courts. See In re Standard & Poor's Rating Agency Litig., 23 F. Supp. 3d 378, 392 (S.D.N.Y. 2014) ("[T]he importance of [judicial] scrutiny is at its zenith where . . . the suit was brought by a State itself, as 'the claim of sovereign protection from removal' in such circumstances 'arises in its most powerful form.'" (quoting Nevada v. Bank of Am. Corp., 672 F.3d 661, 676 (9th Cir. 2012))); California v. H&R Block, Inc., No. C 06-2058 SC, 2006 WL 2669045, at *2 (N.D. Cal. Sept. 18, 2006) ("[A] defendant must overcome a 'strong presumption' against removal . . . . The bar is further raised when the removal in question is of an action brought originally by a State in a State court." (citations omitted)).

### d. Expenses And Costs

The Commonwealth requests "just costs and any actual expenses" under 28 U.S.C. § 1447(c). The Supreme Court has explained that "the standard for awarding fees should turn on

the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). The fee award is a matter of judicial discretion, but courts are guided by the objectives of the relevant Act, and in deciding whether to award fees under § 1447(c), "should recognize Congress' desire to deter removals intended to prolong litigation and impose costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter." Id. at 140. Courts in this district generally award fees only where that facts are "so one-sided as to have made remand a foregone conclusion." Youtsey v. Avibank Mfg., Inc., 734 F. Supp. 2d 230, 239 (D. Mass. 2010); see also Laughlin Kennel Co. v. Gatehouse Media Inc., 202 F. Supp. 3d 178, 181 (D. Mass. 2016) (declining to award fees although defendant had presented no evidence that the amount in controversy met the statutory threshold because the complaint was ambiguous as to the amount in controversy).

The Commonwealth claims that the removal of this action was an unreasonable delay of the preliminary injunction motion it filed in state court and a waste of this Court's time and resources. [ECF No. 19 at 22]. Although the Court cannot rule out the possibility that Global was motivated by a desire to delay this action, the notice of removal was timely under 28 U.S.C. § 1446 and the analysis required more than the rote application of a statutory formula or Supreme Court precedent on an indistinguishable question of law. Contra Schwesinger v. Hurley, No. 13-CV-11436-DPW, 2014 WL 1311756, at *5 (D. Mass. Mar. 31, 2014) (awarding fees because the removal was untimely and the claims of subject matter jurisdiction were spurious); Harvard Real Estate-Allston, Inc. v. KMART Corp., 407 F. Supp. 2d 317, 320, 322–

11

23 (D. Mass. 2005) (awarding fees because it was "plain from the face of the complaint that the jurisdictional minimum of $75,000 was not claimed").

## IV. CONCLUSION

Accordingly, this action is <u>REMANDED</u> to the Superior Court of Suffolk County, and the Commonwealth's request for fees and costs is <u>DENIED</u>.

**SO ORDERED.**

November 28, 2018 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE